7 U.S. 324
 3 Cranch 324
 2 L.Ed. 455
 SCOTT
v.
NEGRO LONDON.
 February Term, 1806
 
 1
 ERROR to the circuit court of the district of Columbia, sitting at Alexandria.
 
 
 2
 Negro London brought an action of assault and battery against Scott, to try his right to freedom. His claim was grounded upon the act of assembly of Virginia, of the 17th December, 1792, P. P. 186; the 2d section of which is in these words: 'Slaves which shall hereafter be brought into this commonwealth, and kept therein one whole year together, or so long at different times as shall amount to one year, shall be free.'
 
 
 3
 The 3d section imposes a penalty upon every person importing slaves contrary to the act.
 
 
 4
 The 4th section is in these words: 'Provided, that nothing in this act contained, shall be construed to extend to those who may incline to remove from any of the United States, and become citizens of this, if, within sixty days after such removal, he or she shall take the following oath, before some justice of the peace of this commonwealth: 'I, A. B. do swear, that my removal into the state of Virginia was with no intent of evading the laws for preventing the further importation of slaves, nor have I brought with me any slaves with an intention of selling them, nor have any of the slaves which I have brought with me, been imported from Africa, or any of the West-India islands, since the first day of November, one thousand seven hundred and seventy-eight. So help me God.'
 
 
 5
 'Nor to any person claiming slaves by descent, marriage or devise; nor to any citizens of this commonwealth being now the actual owners of slaves within any of the United States, and removing such hither; nor to travellers or others making a transient stay, and bringing slaves for necessary attendance, and carrying them out again.'
 
 
 6
 The defendant below took a bill of exceptions, which stated, in substance, the following facts:
 
 
 7
 The defendant's father, claiming to own the plaintiff as his slave, brought him from Maryland into Alexandria, in July, 1802, without the knowledge or consent of the defendant, and hired him out in Alexandria until his death, which happened about Christmas in the same year. The plaintiff has continued to reside in Alexandria until the present time, except about three weeks in April, 1803. The defendant's father never took the oath required by the 4th section of the act. The defendant, in March, 1803, got possession of the plaintiff, and in April following, being then a resident of Maryland, but intending to remove to Alexandria, hired him out in Alexandria, claiming him as his slave, under a bill of sale from Thomas Contee, dated the 3d of September, 1800. The defendant came from Maryland in June, 1803, and on the 5th of July next following, took the oath prescribed by the 4th section of the act. Whereupon, the court instructed the jury, that if they should be of opinion, from the evidence, that the defendant's father brought the plaintiff from the state of Maryland into the county of Alexandria in the year 1802, and exercised acts of ownership over the plaintiff, and hired him out as his slave, and that the plaintiff has been kept in the county of Alexandria one whole year, or so long at different times as amount to a whole year, from the importation to the bringing of the action, and that no other oath was made than that which the defendant has offered in evidence as aforesaid, then the plaintiff is entitled to his freedom, although the jury should be satisfied that he was the property of the defendant at the time he was so brought into the town of Alexandria.
 
 
 8
 E. J. Lee, for the plaintiff in error. At the time the plaintiff in error took the oath, the negro had not been kept a year in the county of Alexandria; the forfeiture had not accrued; the oath was taken within sixty days after the removal of his owner. The importation by the father, without the knowledge or consent of his son, the owner, did not oblige the latter to take the oath within sixty days after such importation. The act is penal, and is, therefore, to be construed strictly. No prosecution against the son, for the penalty under the third section of the act, could have been maintained, upon such an importation by the father. The oath by the son would have been a good defence. The act does not say it shall be taken within sixty days after the importation of the slave, but within sixty days after the removal of the owner.
 
 
 9
 The opinion of the court below was, that the oath ought to have been taken within sixty days after the removal of the negro.*
 
 
 10
 C. Lee, contra. The general rule is, that a slave imported shall be free. Is the present case within the exception?
 
 
 11
 The father, being in possession of the slave, claiming title and exercising authority as owner, brought him from Maryland into Alexandria. If if he did so without authority from the son, and if the son was the true owner, and if the slave was lost by the negligence, or in consequence of the act of the father, he is liable to the son. The father, therefore, was a person to whom the effects of the 2d section would extend, and to save himself from those effects, it was his duty to have taken the oath prescribed by the 4th section.
 
 
 12
 But it is clearly to be inferred from the 4th section taken together with the words of the oath, that the oath will protect the owner's title, only to such slaves as he shall bring with him when he comes to reside in Virginia. The words are, that nothing in the act shall extend to him who may incline to remove, if, within sixty days after 'such removal,' he shall make oath that he has not 'brought with him any slaves,' with an intention of selling them. It is not meant to say, that the slave must come in at the same instant with the owner, but it must be all part of one transaction. The son never brought the slave into Alexandria. He was not brought with the intent of residing here with the son.
 
 
 13
 Suppose the son had never come to reside in Alexandria, and the slave had been kept by the father, in Alexandria, more than a year, what could prevent the slave from obtaining his freedom? Could it be objected, that the father was not the true owner, and that the slave was kept there without the knowledge and consent of the son? Again, suppose the son had not come till after the slave had been kept in Alexandria a year by the father, and the son should then, within sixty days after his removal, take the oath, would that destroy the slave's right to freedom? If it would not, it must be because the son could not connect the importation of the slave, with his own removal. Why could he not connect an importation made thirteen months before his removal, as well as an importation made eleven months before his removal? Is it because a right to freedom had vested in the slave before the removal of the son? That cannot be; because the proviso says, that nothing in the act contained, shall extend to those who may incline to remove, if, within sixty days after such removal, they will take the oath. The word nothing refers as well to the year's residence, as to the first importation of the slave. It might be said, therefore, that the son did incline to remove; and within sixty days after such removal, did take the oath, and, therefore, he is not to be affected by the year's residence. The length to which this argument may be carried, shows its sophistry. It leads to the entire destruction of the 2d section of the act; for if the true owner may come, and make oath after one year, he may after fifty. The proviso, therefore, must be limited to an importation of the slave with his owner. Upon this construction, it will read thus: 'Provided that nothing in this act shall extend to those who shall remove with their slaves, and who shall, within sixty days after such removal, take the oath.'
 
 
 14
 But the son did not remove with his slave, and, therefore, is not within the benefit of the proviso.
 
 
 15
 Jones, in reply. A slave does not, under this act, gain his freedom, unless he was brought in by his true owner. The acquisition of freedom by the slave, is a part of the penalty upon the owner, for violating the law. The freedom can only be acquired in a case where the owner is liable to the penalty of 200 dollars, under the 3d section.
 
 
 16
 When the owner and the slave do not come in at the same time, the sixty days begin to run from the time of the removal of the master. If the owner comes before the slave has resided one year in Virginia, it is sufficient.
 
 February 19.
 
 17
 MARSHALL, Ch. J. delivered the opinion of the court.
 
 
 18
 This case arises under a clause, in an act of the Virginia assembly, giving freedom to slaves who shall be brought thereafter into that state, and kept therein one whole year together, or so long at different times as shall amount to one year; and under a proviso of the same act, that it shall not extend to any person who may incline to remove from any of the United States, and become citizens of this, if, within sixty days after such removal, he shall take an oath which is prescribed in the act.
 
 
 19
 The negro London was brought from Maryland into Alexandria, where he was hired out, in the year 1802; some months after which, his master, the plaintiff in error, also removed into Alexandria, and within the year from the time the negro was brought in, and alse within the sixty days from the time the plaintiff in error removed to Alexandria, the oath prescribed by the law was taken.
 
 
 20
 No right to freedom having vested in London at the time this oath was taken, the question is, has it brought the plaintiff within the proviso of the act?
 
 
 21
 That the plaintiff is within the letter of the proviso, is unquestionable. He is a person who inclined to remove from one of the United States, into Virginia, who actually did remove, and who took the requisite oath within the limited time.
 
 
 22
 But it is contended, in behalf of the defendant in error, that the acts of bringing the negro into the state, and of removing into it, must be concomitant, in order to bring the case within the proviso: Or in other words, that the owner must be a person 'inclining to remove into the state,' at the time the slave was brought in. This inaccuracy of construction seems to be founded on the idea, that the penalty of forfeiting the property, accrues on bringing the slave into the state, whereas, it attaches on his continuance in the state for twelve months. Till such continuance has taken place, the offence has not been committed. If then, all the acts which bring a person within the proviso, are performed before the right to freedom is vested, and before the provisions of the act have been infracted, it seems to the court, that the rights of the party remain unaffected by the act.
 
 
 23
 If London had been ordered to Maryland for a day, and then brought with his master into Alexandria, the construction of his counsel would be satisfied; and it seems strange, where the letter of a law has not been violated, that such an unimportant circumstance should affect its spirit.
 
 
 24
 Unless this mode be admitted, of coming within the proviso, a person inclining to remove into Virginia, whose slaves had preceded him, though not for one year, could not bring himself within, or avoid the forfeiture, although permitting them to come into that state was no offence; a construction of the act which the court cannot think consistent with its spirit or letter.
 
 
 25
 This court is, therefore, of opinion, that the circuit court erred in directing the jury that, under the circumstances stated, the plaintiff below was entitled to his freedom, and doth reverse the judgment rendered by the circuit court, and remand the cause for further proceedings.
 
 
 26
 Judgment reversed.
 
 
 
 *
 The opinion of the court below seems to have been misunderstood by the counsel. The grounds upon which that court decided, are believed to be, not that the son was bound to take the oath within sixty days after the removal of the slave by the father, but that the father ought to have taken the oath within sixty days after his removal with the slave. The act does not require the oath to be taken by the person who has the absolute property of the slave, but by him who brings a slave into the state. The words of the oath are, 'nor have I brought with me any slaves with an intention of selling them.' The son might safely take the oath, and sell the slave immediately, for he did not bring the slave with him. The son would not have been liable to the penalty of 200 dollars under the 3d section, because he did not import the slave: but the father would, because he did import him.
 The right to freedom which the slave acquires is not a mere penalty on the owner, but an independent right, not to be controuled by its consequences. The object of the act was to discourage, and gradually to abolish slawery; or, at least, to prevent its increase. Two means were adopted by the legislature. One was the prevention of further importations; the other was the emancipation of such as should be imported contrary to the act. This emancipation was not a penalty intended solely to prevent importation, but a specific remedy for the evil after it had happened. The penalty of 200 dollars, under the 3d section, was the preventive means, and the emancipation, under the 2d section, was the remedial means of accomplishing the object of the legislature. The evil was not the importation of freemen, but of slaves. To make slaves free was, therefore, as direct an accomplishment of their object, as to prevent their importation. The act could not intend that the right to freedom, given by the 2d section, should depend upon a title litigated between two persons, each claiming to be the owner. The words are, 'Slaves which shall hereafter be brought into this commonwealth'—not by their owners, but by any person claiming and exercising authority over them. If a stranger should take a slave from Maryland, claiming title, and bring him into Virginia, and keep him there a year, the slave must, under the 2d section of the act, be free. And the remedy of the true owner must be against the wrong doer, in the same manner as against a man who should, without authority, take his slave from Maryland, and in attempting to cross the Potowmack, the slave should be drowned. So, in this case, if the father, without authority from the son, brought the slave from Maryland into Alexandria, and the slave thereby gains his freedom, by the negligence of the father, the father is liable to the son. The right of the slave to his freedom does not depend upon the crime of the person who may in law be adjudged to be the true owner. It is sufficient for the slave to show that the person, in whose possession, and under whose controul he was, and who claimed and exercised over him the authority of an owner, has violated the law, and done the act which, by law, confers upon him his freedom. The consequential damage to the true owner cannot affect the slave. He was not the cause of the injury. The true owner must look to the author of the injury, against whom the laws have provided him a remedy.