JACOB PARMENTER, Respondent, *v.* JOHN J. FITZPATRICK, Impleaded, etc., Appellant.

In an action for conversion, the market price of the property is ordinarily the measure of its value.

It is not necessary to prove any particular number of sales in order to establish the market value.

Proof of the price obtained at an actual *bona fide* sale of the property fairly conducted and not forced, whether at auction or private sale, is competent upon the question of such value.

In an action against a sheriff for the alleged unlawful levy upon and sale at Plattsburgh of a stock of goods on execution, it appeared that the greater portion of the goods was old shop-worn stock. The goods were mostly purchased in bulk by the judgment creditors, who sent portions of them to Syracuse and to Utica for sale, and they were there sold. Defendant offered to prove on trial that the purchasers used their best endeavors to sell the goods to the best advantage, and that the sales realized a price stated, also that the entire stock so bid off was sold at the best price which could be realized, which was less than that for which they were bid off. This was objected to and excluded. *Held*, error.

(Argued June 2, 1892; decided October 4, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made at the May term, 1891, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John E. Smith* for appellant.    The plaintiff's acts in attempting to take possession of the stock of goods on the fifth of April, after the defendant, as sheriff, had levied upon that stock on March twenty-first, by virtue of an execution issued upon the judgment in favor of Morse & Lyon for seventy-six dollars and twenty-seven cents, and what the plaintiff said and did on April nineteenth, when, it is alleged, that he tendered the defendant the amount of that execution, did not entitle him to the possession of this stock of goods.    (Code Civ. Pro. §§ 992, 1409; *Osborne* v. *Alexander,* 40 Hun, 323; *Slade* v. *Van Vecton,* 11 Paige, 21; *Van Winkle* v. *Udall,* 1 Hill, 559; *Wheeler* v. *Smith,* 11 Barb. 345; *Williams* v. *Rogers,* 5 Johns. 163; *Noyse* v. *Wycoff,* 114 N. Y. 204.)    The court erred in not charging "that if the plaintiff left Smith in possession and control of the property, to give him credit from appearances, of being the owner of the stock, then he was guilty of a fraud against creditors." (*Preston* v. *Southwick,* 115 N. Y. 139–150; *Blamt* v. *Gobler,* 77 id. 461; *Robinson* v. *Elliott,* 22 Wall. 524; *Brockett* v. *Harvey,* 91 N. Y. 214, 221; Bump on Fraud. Con. 332; *Smith* v. *Lowell,* 6 N. H. 67; *Paul* v. *Crooker,* 8 id. 288; *Smith* v. *McDonald,* 25 Ga. 377.)    The paper of April 2, 1888, was given as a security; although in form of a bill of sale, it appears quite clearly from the evidence that in fact it was only a chattel mortgage, and not being filed, was absolutely void.    (*Dutcher* v. *Smartwood,* 15 Hun, 31; 86 N. Y. 339; *Parshall* v. *Eggert,* 54 id. 18; 127 id. 639.)    If the trial court was correct in submitting to the jury the question of the nature of the instrument of April second,

that is, as to whether it was intended as an absolute bill of
sale, or in the nature of a chattel mortgage, then it is void
as to these defendants, for fraud. (4 R. S. [8th ed.] 2591,
§§ 5, 6; *Dutcher* v. *Smartwood*, 15 Hun, 31; *Stimson* v.
*Wrigley*, 86 N. Y. 332.) When improper testimony has
been admitted in evidence, unless the court can say that the
jury were not influenced by it, and that it could not by any
possibility have effected the verdict, a new trial will be ordered.
(*Waring* v. *U. S. T. Co.*, 4 Daly, 233; *In re Smith*, 95 N.
Y. 516; *Clark* v. *Vorce*, 19 Wend. 233; *Andrews* v. *R. &
W. R. R. Co.*, 54 N. Y. 341; *Williams* v. *Fitch*, 18 id.
546; *Campbell* v. *Woodworth*, 20 id. 499; *Crouse* v. *Fitch*,
1 Abb. Ct. App. Dec. 475; *Wells* v. *Kelsey*, 37 N. Y. 143,
146, 147; *Harrison* v. *Glover*, 72 id. 451; *Hoffman* v. *Con-
ner*, 76 id. 121; *Jones* v. *Morgan*, 90 id. 4; *Holcomb* v.
*Holcomb*, 20 Hun, 157; *Hobert* v. *Hobert*, 62 N. Y. 80;
*Foster* v. *Burke*, 78 id. 155.)

*T. F. Conway* for respondent. There being evidence to
support the verdict as to each of the facts, the finding of
the jury is conclusive and should not be disturbed, it being
" an intendment of law that the verdict settled in favor of the
prevailing party every question of fact litigated upon the
trial." (*Wolf* v. *Goodhue*, 43 Barb. 400; 41 N. Y. 620.)
The evidence establishes that the instrument under which the
plaintiff claims title to the property in question was an abso-
lute bill of sale. (*Blant* v. *Gabler*, 77 N. Y. 461; *Brown* v.
*Guthrie*, 110 id. 435; *Bumper* v. *Rushmore*, 79 id. 19;
*Cleveland* v. *N. J. S. Co.*, 25 id. 666; Code Civ. Pro.
§ 1409; *Stewart* v. *Beal*, 7 Hun, 405.) Plaintiff was a pur-
chaser for value. But the defendant, having seized the prop-
erty under execution, is not in that situation. The plaintiff,
by assuming to pay notes on which he was only liable as
indorser for his vendors, who were the makers, thereby
became principal debtor instead of surety, and a purchaser in
good faith and for value. (*Williams* v. *Shelley*, 37 N. Y.
375; *Miller* v. *Lockwood*, 32 id. 293; *More* v. *Holland*, 4

Den. 264.) Defendant's claim that he was entitled to possession of all the property sued for because, before plaintiff acquired title, he had made a levy thereon under an execution issued on a small judgment of about $76 against plaintiff's vendors is not sustained by the evidence and does not avail him. (*Tiffany* v. *St. John*, 65 N. Y. 320; *Halpin* v. *P. Ins. Co.*, 118 id. 166; 2 John. Ch. 172; *Courtright* v. *Cady*, 21 N. Y. 366; *Edwards* v. *Reynolds*, H. & D. Supp. 53; *Baker* v. *Rand*, 13 Barb. 152; 2 Johns. 442.) A new trial should not be granted because the damages were excessive, as the evidence shows that the property was worth more than the amount of the verdict. (*Peck* v. *N. Y. C. R. R. Co.*, 8 Hun, 289.) There are no exceptions in the case by the defendant to the rulings or charge of the court, or to the admission or rejection of evidence that would justify the reversal of the judgment. (*Harris* v. *Panama R. R. Co.*, 48 N. Y. 661; *Wells* v. *Kelsey*, 37 id. 143–145; *Mott* v. *Kipp*, 10 Johns. 478; *Westerville* v. *Smith*, 2 Duer. 460; *Benjamin* v. *Smith*, 4 Wend. 324; *Hotchkiss* v. *G. F. Ins. Co.*, 5 Hun, 98; 1 Greenl. on Ev., § 449; *Stevens* v. *Rodger*, 25 Hun, 54.)

PECKHAM, J. The plaintiff commenced this action to recover from the defendant, who was the sheriff of the county of Clinton, the value of certain goods levied upon and sold by the defendant as the property of the firm of A. C. Smith & Co., of which property plaintiff claims to have been the owner under a bill of sale from the firm to him. Certain judgment creditors of the firm had issued executions upon their judgments and placed them in the hands of the defendant, as sheriff, and he had levied upon the property and sold it under the execution.

The plaintiff recovered a verdict at Circuit, upon which judgment was entered and an appeal taken therefrom by defendant to the General Term, which court has affirmed the judgment, and from the judgment of affirmance the defendant has appealed to this court.

Some questions were raised upon the trial at the Clinton Circuit in May, 1890, as to the character of the writing under

which plaintiff claimed title, whether it was an unconditional bill of sale, or intended as a security, and whether it was executed in good faith or fraudulently. These questions were submitted to the jury, and their general verdict for the plaintiff shows they found them in his favor.

Another question was made as to the value of the goods, assuming them to have been the property of the plaintiff at the time of the sale under the executions. The plaintiff alleged the value to have been thirty-five hundred dollars at the time of the conversion on the 19th of April, 1888. The defendant denied that allegation. The jury rendered a verdict of four thousand dollars for the plaintiff, which included interest on the principal sum.

Although the value of the property was thus put in issue, there was not much contradiction as to its character. It consisted of goods in a store in Plattsburgh, in Clinton county, and was described as school and miscellaneous books, papers and envelopes, blank-books and stationer's goods generally, confectionery, albums, bibles, artists' materials, toys, sheet music, musical publications, some small musical instruments, a few gold pens and some pencils. A large portion of it was old stock, the accumulation of years, and but a small portion new or fresh stock; school-books not in use at the time and place, out of date, and a good many of the miscellaneous books damaged by handling. The stock was what would be called shopworn.

The judgment creditors were represented at the sale of these goods under the various executions. Before the sale, their representative had examined them and had come to a general conclusion or opinion as to their value. The sale under these executions resulted in the purchase in bulk of most of the goods by the judgment creditors through their representative. The goods thus purchased were sent, portions of them to Syracuse, and portions to Utica, N. Y.

The defendant upon the trial offered to show that the judgment creditors used their best efforts to sell these goods to the best advantage and at the highest prices they could, and that

they realized for them several hundred dollars less that the amount bid for them at the public sale already mentioned. The record shows there was an objection to this offer of evidence, but no grounds of objection were stated, and the objection was sustained and an exception taken by defendant.

The defendant then offered to show that the entire stock bid off was subsequently sold at the best price that could be realized and for about eleven hundred dollars (which was considerably less than the amount of the bid already mentioned), and this offer was objected to in the same way and the objection sustained, and the defendant excepted.

The property being of such a nature that sales thereof would not be a frequent occurrence, it is apparent that the basis for proving a market price would be somewhat vague. Yet a market price would be evidence of the value of the goods. Shopworn goods partake somewhat of the character of second-hand goods, and while fresh goods of the same description might be of one value, these goods would naturally be of less. The facilities for the sale of such property would seem to be as good at a city like Syracuse or Utica as at Plattsburgh. The market price at either of the former places would, therefore, be good evidence of the market price at the latter. The value at each place would probably be about the same. At any rate, there is no evidence to show there was any difference in the value at these different places, and the objection to the evidence offered is not pointed at any such possible ground of distinction, and we are not to assume it under such circumstances.

Nor is there any objection upon the ground of the lapse of time (not more than a year) after the bid at the execution sale. The time would not be sufficient to exclude this evidence in the absence of any fact showing that it had caused any great or noticeable change in the value of this class of goods. The inquiry, therefore, is as to the competency of evidence of the price an article sold for at private sale as bearing upon the question of the value of that property.

The plaintiff claims that the defendant has taken the plaintiff's property from him without legal authority, and if he

proved it, the defendant must pay him the value thereof. The market price of personal property at the place of conversion is ordinarily the measure of its value. The market price of personal property is nothing but the general or ordinary price for which the property may be bought and sold. There is no particular number of sales necessary to be proved before such price can be said to be established. It seems plain, however, that proof of the price obtained at an actual sale made *bona fide,* and not a sale which was in any way *forced,* would tend in the direction of proving or establishing a market price, and hence would be some evidence of the value of the property sold. It might not, and indeed it is not claimed to be conclusive, but it seems to be competent upon that question. If there were no other evidence upon the subject, it certainly would be sufficient for the jury to base a verdict upon, and if there were other and contradictory evidence, then it should be placed before the jury for its consideration upon the question of value. A market price is simply the result of sales of the same kind of property.

In the ordinary case of purchase and sale of property, the fact that the purchaser and seller have met and agreed upon a price, and actually bought and sold the property at that price, ought to be in the nature of things some evidence of the value of that property, which has thus changed hands in a *bona fide* transaction. Evidence of a sale of the same property at a different place and time from the period of the sale under investigation, may be competent or incompetent, depending, among other things, upon the distance both of place and time, and even upon the stable character of the value of the property itself. A sale of stock at the Stock Exchange in a corporation whose stock was greatly dealt in, for the sole purpose of speculation, would not be much evidence of a market price for the same stock months before or after such sale. The price paid at the sale of a horse six or seven years prior to the time when his value was the subject of investigation, might be regarded as no evidence of his value at such time. And on the contrary, evidence of what property, such

as the property here in question actually sold for at a com-
paratively few miles distant from the place of conversion, and
within a few months of that time, ought, as it seems to me, to
be some evidence of the value of such property at the time
and place in question. It is evidence of an actual sale, and
on that account tends to show the market price and also the
value of the property so sold. The parties selling this prop-
erty were in the position of most owners wishing to sell and
desirous of getting the highest price they could. They had pur-
chased it at a certain price, and any sale below it left them
losers, and any sale at a greater sum left them the gainers.
These creditors had, as appears, every motive to obtain the
best price they could for these goods, and I am unable to see
why the price the goods sold for may not be proved as some
evidence upon the question of their real value at the time of
the conversion. There is no pretense that the small differ-
ence in time and place created in this case any difference in
the real value of the goods or in the market price thereof. If
the goods had been sold at auction within this time and at the
place stated, it seems to be assumed that evidence of what
prices they brought at such auction sale, would be competent
upon the question of value. It is said this is because it has
been so decided in this court. It is true that proof of the
prices obtained upon sales at auction has been declared by this
court as in many cases high evidence of the value of the prop-
erty thus sold.

But the reason for the admissibility of this kind of evidence
does not and cannot rest upon the fact that the sale was by
auction, but upon the fact that there was an actual sale, a real
transaction between the buyer and seller. The price given
and obtained upon such actual occurrence is naturally regarded
as some evidence of the value of the thing bought and sold.
There is no particular force in the fact that the sale was by
auction which tends to prove the value of the thing sold any
more than any *bona fide* sale in private. The auction sale
itself shows that there was but one bidder who would give the
price for which the property was sold. The sale, therefore, is

only evidence that he alone was willing to pay that price for the property, and that the owner was willing to sell for that sum, assuming that it was not a forced sale. If forced, then the sale shows the views of but one party to the transaction, because the seller has no voice in it. In any event the important fact is an actual sale of the property in a fair way. If the sale were so far forced as to practically withdraw the views of the seller from any weight in the question of value, and conducted under oppressive circumstances and in an unfair way, then evidence of the price obtained at such an auction sale ought not to be admitted. In truth there might be objection to the evidence of a sale at auction upon the question of value on the ground that, although it showed an actual transaction between a buyer and seller, yet it is matter of common knowledge that sometimes such sales are improperly conducted and are forced and unfair, and, therefore, by reason of such possibilities the price paid at such sales ought not to be received as any evidence of the value of the property sold. This objection would suggest itself to anyone. The question whether the possibility that unfairness sometimes may be present ought to prevail as a conclusive objection to the evidence in any case, has been decided in the negative in this state. It was held that where it appeared that the sale was fairly conducted and bidders were present, and nothing occurred to show there was anything forced or unfair in the whole proceeding, evidence of the price obtained at such sale was competent.

In the case of *Campbell* v. *Woodworth* (20 N. Y. 499), in which Judge Denio wrote the opinion of this court, the decision was in favor of the admissibility of such evidence under such facts. The judge thought there were many cases of sales at auction where the price obtained ought not to influence the jury in assessing the value of the property. Those were cases where the sales were not fair and really public, and where bidders were not present in numbers as they should have been. In other cases he thought that the result of an auction sale might be very high evidence of the value of the property sold. The question was not raised as to

whether evidence of the purchase price of property at private sale was admissible, but simply whether the price obtained upon a sale at auction was admissible; whether the fact that the sale was at auction ought to render evidence of the price obtained incompetent.   I think evidence of the price obtained at a private sale of chattels made in a *bona fide* manner, and not for the purpose of establishing a price, has been held competent in this state for many years.   It has been admitted because it was evidence of an actual transaction between parties interested in the price of the article, the one to get the highest and the other to pay the lowest price for the property, and the fact that these diverse interests agreed upon a price was, in the nature of the question, some evidence of the value of the property sold.

In *Cary* v. *Greenman* (4 Hill, 625) COWEN, J., said that the price agreed upon by the parties at the time of the sale was high evidence of the then value of the horse, if sound.   It was an action for breach of warranty, and it was not pretended that the price agreed upon was conclusive upon the question of value, but simply evidence upon that subject.

Judge WOODRUFF in *Beach* v. *Raritan, etc., Co.* (37 N. Y. 457–470), quotes this language of Judge COWEN, and himself adds that whether the price paid for a chattel or the price at which it is sold be admissible in evidence, depends upon the special circumstances in each case, as to the remoteness in time and place and other matters, but it is not claimed that the evidence of what price a chattel sold for must be confined to a sale at auction.

In *Hoffman* v. *Conner* (76 N. Y. 121), which was an action against the sheriff of New York county to recover damages for a false return, these facts appeared : Certain personal property had been taken by Conner, the sheriff, from the plaintiff, Hoffman, in an action in which Hoffman was defendant, and upon a writ for claim and delivery.   Upon the trial of that action this plaintiff (defendant in that) recovered a judgment for the value of the property and damages for the detention thereof.   Upon that judgment execution was issued to the

defendant, commanding him to take the property from the plaintiff in that action, or in whose hands soever it might be, within his county, and deliver to this plaintiff. The execution thus delivered to Conner was held by him and he made a return that he could not find the property. In truth, it was in the hands of a third person in the same county, to the knowledge of the sheriff. The plaintiff, Hoffman, sued the sheriff for a false return, and upon the trial the plaintiff, for the purpose of proving the value of the property, was asked by her counsel what she paid for it. This was objected to as incompetent and the objection was overruled. This court held the ruling proper on the ground that what a party paid for property is some evidence of value. It was not pretended that the sale at which the plaintiff purchased was at auction.

Enough has been said as it seems to me to show that the price which an article brings upon a sale is some evidence of its value, and that such sale need not be at auction.

In this case it appears beyond all controversy that it was to the interest of these judgment creditors, the sellers of the property at Syracuse and Utica, to obtain as high a price as they could, and where the offer is to show that in fact the property was sold to the best advantage, we think the evidence as to the result of the sale should, under the circumstances of this case already detailed, have been admitted. It was not conclusive, perhaps a jury might think it was not very influential, but we say simply that it is competent and should have been taken. As there must be a new trial, on this ground we do not think it necessary to discuss the other questions which the defendant argued, for in regard to those in which there might be some doubt, they may not arise upon the new trial.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.