In re BLOCH et al.

BLOCH v. FARJEON et al.

(Circuit Court of Appeals, Second Circuit.    July 17, 1901.)

No. 146.

**1. BANKRUPTCY—INVOLUNTARY PETITION—ISSUES—PREFERENCE—INSOLVENCY—INTENT—EVIDENCE.**

An involuntary petition in bankruptcy alleged that the debtor, while insolvent, conveyed certain property to a creditor, with intent to prefer him over other creditors. The insolvency was denied, and on issues tried before a jury the court, in effect, charged that if, at the date of actual insolvency, the alleged bankrupt paid a considerable debt, which in fact constituted a preference, he must be held to have intended the consequences of his act, and the intent to prefer was conclusively established, so that rebutting evidence on the part of the alleged bankrupt was of no avail. *Held* error, since, though the fact of a payment by an insolvent, which operates as a preference, is prima facie evidence of an intent to prefer, such evidence may be overcome by proof that the debtor was ignorant of his insolvency, and that his affairs were such that he could reasonably expect to pay all his debts.

**2. SAME—ASSETS—PROSPECTIVE PROFITS.**

On an issue as to whether a debtor was insolvent at the date of an alleged preferential payment to a creditor, prospective profits on goods which had been ordered from Europe, but not shipped or paid for, and for which orders had been taken, to be delivered six months thereafter, should not be considered as an asset of such debtor.

**3. SAME—SALES BY RECEIVER—PRICE RECEIVED.**

Where a debtor's assets consisted in part of a stock of unseasonable goods, which had been taken and partly sold by a receiver, on the trial of an issue as to whether such debtor was insolvent at a date a few days prior to such receiver taking possession, evidence as to the amount of such goods sold by the receiver, and of the amount on hand at the cost price, was competent, and should have been admitted, as important on the question of the market value at such prior date.

In Error to the District Court of the United States for the Southern District of New York.

This is a writ of error to review a judgment of the district court for the Southern district of New York, which, upon an interlocutory petition in bankruptcy, adjudged that the individuals composing the firm known as the "Universal Art Publishing Company" and the co-partnership were bankrupts. The issues under the pleadings came to trial before a jury.

S. B. Livingston, for plaintiff in error.

Harry H. Maas, for defendants in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. An involuntary petition in bankruptcy was filed on August 22, 1900, praying for a decree in bankruptcy against Frederick E. Bloch and Samuel Vander-Wheelen, co-partners. Vander-Wheelen filed a sworn consent. Bloch filed an answer, required a trial by jury, and is the only plaintiff in error. The alleged act of bankruptcy, being the one specified in subdivision 2 of section 3 of the bankruptcy act of 1898, was, in substance, that the co-partners on June 11, 1900, while insolvent, conveyed and transferred certain of their property, consisting of outstanding accounts, to F. MacD. Sinclair, a creditor of said firm, with intent to prefer him over their other creditors. The co-partnership began on January 1, 1899, with a capital of $17,500, and its business seems to have been the sale of Christmas and holiday and lithographic goods. On June 1, 1900, the partners were dissatisfied with each other; the firm owed $9,000 to Harry E. Bloch, the brother of F. E. Bloch, who wanted security; the business was poor, and the firm had very little cash. An inventory showed nominal assets of about $27,000, of which the cash on hand was $119.65, and the fixtures were $826.86. The liabilities were $20,356.79. A lawyer was consulted, and the result was a transfer, dated June 21st, to Sinclair, who owned two demand notes of the firm, indorsed by Harry E. Bloch, amounting to $2,000, of outstanding accounts of the firm amounting to $2,424.31 in payment of these notes, from which he has realized about $1,800. A complaint in the state court for dissolution of partnership and the appointment of a receiver was verified by F. E. Bloch on June 11, 1900, and was served on June 23d, and receivers were appointed. All the employés had been discharged on June 9th. Upon the trial of the case to the jury, the main contested question being that of solvency at the time of the transfer to Sinclair, the judge charged the jury that this transfer was a preference to him, under section 60 of the bankruptcy act, if the transfer was made while the firm was insolvent; and further charged as follows:

"In order, however, to constitute a preference, it must be an act done while the person is insolvent. If the bankrupts were insolvent, then this necessarily gave Mr. Sinclair a preference; and I must say to you, as a matter of law that in that case, as the act was with intent to do what on its face it necessarily does, the firm are estopped—Mr. Bloch is estopped—from denying that he did not intend to give an advantage, if, in fact, he was insolvent. On the face of it, he intended to make the payment of those two debts certain by turning over those accounts. That was to be

made certain and secure. So far as this paper could do it, that accomplished it. If he was insolvent, the necessary effect is that it was done to give that advantage, to give that preference, because by this very act he intends to secure that certainty to Mr. Sinclair. Therefore, on the evidence, the essential question that, after all, remains as the subject of dispute is whether the concern was solvent at that time or not."

There was ample evidence in the case from which the jury could find that the firm was insolvent on the 21st of June, and they found for the petitioners accordingly. To the charge that, if the jury found that the firm was insolvent on June 21st, the verdict must be for the petitioners, in view of the obviously preferential transfer to Sinclair, the defendant Bloch excepted. The judge was of opinion that if, at the date of actual insolvency, as defined in section 1 of the act, the alleged bankrupt paid a considerable debt from the assets of the firm, which in fact constituted a preference, he must be held to have intended the consequences of his act, and that the intent to prefer was conclusively established, so that rebutting evidence on the part of the alleged bankrupt must be without effect. In this respect we think that the charge was erroneous. In an involuntary petition, which alleges the act of bankruptcy described in subdivision 2 of section 3, the petitioner takes the burden of proving the insolvency of the defendant if he denies the allegation of insolvency, and presents himself at the hearing with his books and papers, and submits to an examination; and the burden also rests upon the petitioner to prove the intent to create a preference. The fact of an intent sufficiently appears from the insolvency and the preference, if no attempt is made by the defendant to show an absence of intent; but it is permitted to him to show such absence by reason of his entire ignorance of insolvency and a reasonable expectation of ability to pay his debts. Thus, in Wager v. Hall, 16 Wall. 584, 21 L. Ed. 504, the supreme court, in construing the thirty-fifth section of the bankrupt act of 1867, which relates to preferential transfers of property to a creditor by an insolvent, says:

"The transfer by a debtor who is insolvent of his property, or a considerable portion of it, to one creditor as a security for a pre-existing debt, without making any provision for an equal distribution of its proceeds to all his creditors, operates as a preference to such transferee, and must be taken as prima facie evidence that a preference was intended, unless the debtor or transferee can show that the debtor was at the time ignorant of his insolvency, and that his affairs were such that he could reasonably expect to pay all his debts; and that a transfer by an insolvent debtor of his property, or any considerable portion, with a view to secure it to one creditor, and thus prevent an equal distribution among all his creditors, is a transfer in fraud of the bankrupt act."

This statement is, in fact, a modification of the rule declared in Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481, in which the court says that such a preferential transfer must be taken as conclusive evidence of an intentional preference, unless the debtor can show his ignorance of the insolvency, and that the burden of proof is thrown upon the defendant. While the evidence of intent resulting from the fact of preference by an insolvent is very persuasive, and requires strength of proof on the part of the alleged bankrupt to

overcome it, we are not inclined to vary the rule as declared in Wager v. Hall, and to recur to the more rigid one in the previous case of Toof v. Martin, and to say that the burden of proof is thereby shifted, and thrown upon the defendant. Parsons v. Topliff, 119 Mass. 245, 249. Inasmuch as testimony was given by F. E. Bloch to show the reasonableness of his expectation of being able to carry on the business, and an absence of intention to prefer a creditor, the question of intent should have been submitted to the jury.

The insolvent co-partnership had ordered from Europe, prior to June, 1900, about $20,000 of goods, and had taken orders in this country for a portion or all of these goods, to be delivered in the following December. These orders from Europe were canceled by Vander-Wheelen on account of the inability of the firm to pay for them, and the orders in this country were also canceled. The defendant wished that, in the estimate of the fair value of the assets of the firm, the prospective profits which would have resulted from the purchase of these goods and from their sale in this country should be taken into account, and excepted to a charge of the court that these prospective profits were not property capable of valuation in determining the question of solvency. It seems manifest that prospective profits upon goods ordered, but not paid for, and not delivered, which may arise upon orders to be filled during the succeeding six months, if not canceled, and if paid for, were not property of the firm on June 21st. The district judge excluded questions in regard to the amount of goods sold by the receivers, the amount of goods on hand at cost price, and kindred questions, which were intended to bear on the question of the value of the stock on June 21st. The receivers qualified on July 7, 1900, and thereafter had been, and were in October of that year, when the questions were asked, selling the stock at private sale. There was some difficulty in ascertaining the value of the goods on June 21st, because they were holiday goods, partly out of date; the business was not flourishing; and, if there had been no practical test, ascertainment of the value must be obtained from the estimates of experts. When the business was thus at a standstill, it was taken hold of by the receivers, who continued to sell what they could at private sale, and who knew the price which they had been able to obtain. We see no adequate reason why the evidence of value derived from actual sales should be inadmissible. The subject of the inadmissibility, upon the question of the value of a stock of shopworn goods at a particular date, of the evidence obtained by bona fide sales of the same stock at private sale, within the subsequent year, by execution creditors who had bought the stock in bulk, was examined at length by Judge Peckham in Parmenter v. Fitzpatrick, 135 N. Y. 190, 31 N. E. 1032, with the conclusion that the evidence of value derived from bona fide sales and efforts to sell was admissible, and might be important upon the question of value at a previous date. The stock was taken by the receivers in July, who endeavored to reduce it to money by private sales; and, if these efforts to work off the goods were bona fide and energetic, the result

may have been a fair test of actual value, and should be presented to the jury. The judgment of the district court is reversed, with costs, and the cause is remanded to that court for a new trial.