THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES O. SEBRING, Relator, *v.* MUNSON B. DOWD and Others, as Assessors of the City of Corning, Steuben County, N. Y., Respondents.

Supreme Court, Steuben County, February 13, 1928.

**Taxation — assessment — application to confirm report of referee in proceedings to fix valuation of residential property in city of Corning — elements considered in fixing assessment pursuant to Tax Law, § 6 — report confirmed.**

The report of a referee in this proceeding to fix the valuation of residential property in the city of Corning is proper and should be confirmed, where in determining the assessment the referee considered, pursuant to section 6 of the Tax Law, all the elements such as cost of construction, reconstruction, the size of the property, the demand for similar property, its sale price and the sale price of similar property, and any other considerations bearing upon value. In no instance can the assessment be more than the full value of the property or what the property is reasonably worth.

MOTION by relator to confirm referee's report.

*Sebring & King,* for the relator.

*John C. Wheeler [Justin V. Purcell* of counsel], for the respondents.

RODENBECK, J. The general impression made from the reading of the testimony in this case is that the conclusion arrived at by the referee is reasonable and should be sustained. The estimates of valuation of the respective witnesses have the usual variations; in this instance, those of the relator placing the value from $13,000 to $20,000, and those of the defendants from $65,000 to $75,000. This evidence of experts is not of much assistance to the court. They cannot both be correct.

In June, 1921, the relator's property had a value somewhere between the lowest and the highest estimate. The assessment for that year was $30,000, which, with a sixty per cent assessment, would make the assessors' estimate of value for 1921, $50,000. The referee has placed the value at $30,000, making the assessment $18,000.

The first thing that stands out in the testimony is the limited character of the market for this property. It has a fine location, overlooking the business portion of the city of Corning, but it is out of proportion, in respect to cost of construction and reconstruction, to the general demand for residential property. It was built by a very wealthy man about thirty-five years ago, and is suitable only for a man of large means. It occupies the center of three lots, facing the street south of the court house park, but the building is too large for ordinary residential purposes. The house, constructed over a generation ago, cost in the neighborhood of $75,000 to build, and would cost $125,000 to reproduce, but these costs are not final tests of value. In some respects, considering the height of the ceilings, the house is not modern and is too large for a man of average means and is, therefore, unique, having, in Corning, a very limited market.

In this instance the property was sold in 1916 for $15,000 after a long effort to sell it. It is to be assumed that it was sold for all that could be obtained for it, which would be all that it was worth. No matter how much a piece of property costs, it is worth what it will sell for, after a reasonable opportunity to secure purchasers. The sentiments surrounding the construction by the owner, which prompted him to put so much money into it, vanish when it is put on the market. It ceases to be a home and becomes so much real estate, having such value as a buyer is willing to pay, for such uses as he desires to make of it.

There is evidence to sustain the finding of the referee Paul Folger as to value. All of the estimates of the witnesses were largely bare opinions, with no sales of similar property to support them. No similar property had recently been sold, and there are few properties in Corning with which it can be compared. The defendants' witnesses fail to give due weight to the price paid for the property by the relator. This fact cannot be brushed aside and disregarded. It stands out as the value of the property in 1916, all that could be obtained for it, and with the increase in values since, which one witness placed at forty per cent, would make the estimate of the referee a fair one as a basis of assessment. There are other considerations besides the purchase price, but when the purchase price represents all that could be obtained under normal

conditions, it furnishes strong evidence of what the property is worth. (*People ex rel. New York Stock Exchange B. Co.* v. *Cantor*, 221 App. Div. 193, 198; *Parmenter* v. *Fitzpatrick*, 135 N. Y. 190, 196.) The property is clearly not worth $65,000 or $75,000 or even $50,000. No one would give more than $15,000 for it in 1916, and no one would give for it any such price as defendants' witnesses testified to. There is not one rule for measuring value for assessments and another for purchase and sale It is the market value, the "full value," that governs and not the mere *ipse dixit* of the assessors. (Tax Law, § 6.)

Where there is no market, or a very limited one, for residential property by reason of adaptability to individual or particular uses or extravagance in construction, the property still has a value for assessment, though a purchaser may not, readily be found, but it is not necessarily the cost of construction or the cost of reconstruction. If there is no guide for the assessors in sales of similar property, they may still assess it but not beyond what would reasonably be its fair market or full value. The test is what the property would fairly bring if offered for sale and there was a willing buyer. The history of such property as the relator's, in Corning and elsewhere, is that it will not bring on a sale the money that has been put into it, or what it would cost to reproduce it, but only what it would profitably be worth to a purchaser. Even if a purchaser existed who wanted such property, experience shows that he expects to buy the property at a fraction, sometimes very small, of its original or reproductive cost. The assessment all depends upon circumstances. Each assessment is a matter of judgment upon all the facts, but it cannot be more than the true value of the property. The assessment upon this property is measured " by the price which could be obtained after a reasonable and ample time for sale." (*People ex rel. Sebring* v. *Dowd*, 206 App. Div. 727; *People ex rel. Strong* v. *Hart*, 216 N. Y. 513; Suth. Dam. [4th ed.] § 447.)

The question is, what was the property worth, in the market, in June, 1921. There is no foundation, in sales of similar property, for the estimate of value such as the assessors have placed upon it. If it cannot be sold for the value placed upon it by the assessors, it is not worth it, and cannot be assessed for it. The value of $50,000, placed upon it by the assessors, is arbitrary and not based upon any sales of similar property. The true value is much below that amount, and the evidence shows that it should not be valued at more than $30,000. The value of the larger pieces of property, selected for comparison, is largely a matter of opinion. Of the twenty parcels enumerated in defendants' brief, only three have

a higher assessment than relator's property. One witness described relator's property as a " Muscle Shoals " proposition. Other properties, extravagantly built, sold or were offered for a fraction of their cost. One of the defendants' witnesses said relator's property was worth $45,000 in 1916, although it was bought for $15,000. Another of defendants' witnesses said that it was worth $65,000 in 1921. The cost of construction and reconstruction was given undue weight by some of defendants' witnesses. Most of the witnesses said that there was a limited market for the property, which, of course, would affect its value. Taking the property as residence property, its construction many years ago, its size, character, expense of upkeep, and limited market, and giving due weight to all the estimates of value in connection with the sale price in 1916, and subsequent enchancement of values, a valuation of $30,000 is a fair deduction from all the evidence and the report should be confirmed.

So ordered.