**NATIONAL BEEF PACKING COMPANY,**
Respondent,

v.

**MISSOURI PACIFIC RAILROAD COM-
PANY, Appellant.**

No. 25695.

Missouri Court of Appeals,
Kansas City District.

April 3, 1972.

B. Kent Snapp, Hilary A. Bush and James L. Burgess, Kansas City (Johnson, Lucas, Bush & Snapp, Kansas City, of counsel), for appellant.

George M. Winger and William G. Levi, Kansas City (Smith, Schwegler, Swartzman & Winger, Incorporated, Kansas City, of counsel), for respondent.

PER CURIAM:

The principal issue is whether an amended petition stated a new cause of action for damage to a shipment of beef so that the claim would be barred under the notice provisions of the Bill of Lading, and by 49 U.S.C.A. 20(11). Section 2.(b) of the Bill of Lading provides that a notice of claim shall be filed within nine months of the delivery of the property, and suit shall be filed within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier had disallowed the claim or any part thereof specified in the notice. 49 U.S.C.A. 20(11) provides that carriers may not provide a shorter time than nine months for the giving of the notice, nor for the time of institution of suits within two years. Judgment for respondent was entered in the amount of $3,813.72, pursuant to the verdict of a jury.

The facts are that on January 29, 1963, *two* shipments of beef were made by respondent to its consignee in South Kearney, New Jersey. One of these shipments was loaded on "piggy-back" trailer RCM 745, and consisted of 43 choice steers weighing 27,904 pounds. The other shipment was loaded on trailer RCM 757 and consisted of 44 choice steers weighing 28,977 pounds. Both shipments were described in separate bills of lading. On February 20, 1963, respondent gave notice of its claim for loss in shipment referring specifically to 43 choice cattle weighing 27,904 pounds, and to trailer RCM 745. Appellant disallowed this claim on July 30, 1963, specifically referring to RCM 745. In the original petition, filed July 15, 1965 (filed within two years and one day from the date of the disallowance notice), the shipment was described as consisting of 44 choice steers weighing 28,977 pounds. The original petition makes no reference to any bill of lading or trailer number, but alleges generally that respondent performed every condition incumbent upon it under the contract of shipment.

On June 5, 1970, pursuant to leave granted by the court in sustaining respondent's motion to file an amended petition, because of alleged clerical errors in the original motion, an amended petition was filed. This petition alleged that the shipment consisted of 43 choice steers weighing 27,904 pounds. Appellant claims that the amended petition alleged a new cause of action, a departure from the first claim, and therefore it was barred under the terms of the bill of lading.

The motion for leave to file the amended petition was supported by an affidavit of Mr. Wayne F. Caskey, one of respondent's attorneys, to the effect that the original petition was in error in alleging that the loss on the beef shipment sued for consisted of 44 choice cattle weighing 28,977 pounds, instead of the correct allegation that the shipment was 43 cattle weighing 27,904 pounds.

The amendment to the petition did not result in a new cause of action being asserted. The amendment is no different than one where a prayer for damages under an original claim is permitted to be amended. See Peterson v. Kansas City Public Service Co., Mo., 259 S.W.2d 789, 792[5]. Nor, had the original petition not been amended as was done, would the facts submitted in its support (which were all based upon RCM 745—43 head of cattle weighing 27,904 pounds) have prevented a requested amendment to conform to the proof under Civil Rule 55.54, V.A.M.R. In short, the amended pleading here did not constitute a new cause of action; the pretrial matters referred to the correct bill of lading, shipment, and the loss thereunder which was the basis for the claim; appellant was not prejudiced by the amendment which related only to the amount of damages claimed under the shipment for which it had due notice, and for which the suit was timely filed; and upon which facts the action was tried.

Appellant says respondent did not produce evidence from which the jury could determine the lawful measure of damages which it says is the difference in the fair market value of the meat before and after the alleged spoilage. The evidence presented by respondent by its president, Mr. John Jacobson, is that on February 20, 1963, he advised that the meat shipment of January 29, 1963, of 43 choice cattle weighing 27,904 pounds was delivered to the consignee about 9:30 a. m., on Trailer RCM 745. On a report of the Railroad Perishable Inspection Agency, the meat was found to be sticky, discolored and odorous throughout. Appellant was advised by Mr. Jacobson, "We were able to realize 40¢ per pound from the sale of the hindquarters to Jefferson Packing Company for a salvage of $5,262.00 and then sold the forequarters to Harry Noah, Newark, New Jersey, for the sum of $4,019.89 or a total salvage of $9,281.89, thereby incurring a loss of $2,577.31 on the sale of the salvage. In addition thereto, we were charged two extra days demurrage at $22.00 per day, an additional $44.00, or a total loss of $2,621.31." Appellant denied the claim by letter dated July 30, 1963. On January 29, 1963, respondent received an order from First National Stores, Inc., Meat Buying Department, for 45 "US. CH. Beef Steers" at 42½ cents per pound. Forty-three steers were loaded on trailer RCM 745 on January 30, 1963. The invoice to First National Stores shows 43 choice steers, net weight 27,904 pounds at $.42½ per pound, for a total amount of $11,859.20. Of these, other invoices show that 86 choice hinds were sold to Jefferson Packing Co., Hoboken, New Jersey for $5,262.00 and 86 plates and briskets, 86 backs, were sold to Harry Noah & Sons for a total of $4,019.89, by respondent. This evidence shows that respondent had a contract for the sale of the 43 steers for a total price of $11,859.20, a portion of the contract price it lost by reason of in-transit spoilage.

What appellant claims is that the general rule of damages, as stated in 13 C. J.S. Carriers § 264, p. 609, applies: "The general rule is that the measure of damages for loss of property shipped is the market value at destination, and in case of injury, the difference between the value at the time and place of delivery in an uninjured condition and the value in the depreciated condition in which the property is actually delivered." The contention ignores the exception to the general rule where the facts show that a *shipper* lost a *contract price* because of damage in transit. This exception flows from the provisions of the Carmack Amendment, 49 U.S. C.A. Sec. 20(11), that the interstate common carrier shall be liable for the full actual loss, damage or injury to property caused by it. The cases which apply the Carmack Amendment language, "full actual loss" say that the general rule, i. e. market value test, should be discarded where another rule best measures the damages. One such case is F. J. McCarty Company, Inc. v. Southern Pacific Compa-

ny, 289 F.Supp. 875, 883[8, 9], (N.D.Cal.) (aff'd 428 F.2d 690), where plaintiff claimed his damages for loss of grapes should be measured by his contract price he would have received in South America, with which the court agreed. The court said such damages were not speculative or remote, but were more definitely related to the grapes damaged than the more speculative market values which defendant contended existed in New York. In St. Louis-San Francisco Ry. Co. v. Greig, 182 Ark. 261, 263, 31 S.W.2d 290, 291[2], the shippers contracted a shipment of strawberries to their consignees for $4.10 per crate, but because of their damaged condition were compelled to accept an average of $3.00 per crate. The court held that "The measure of damages, if any, was the difference between the contract price and the price received." Other cases which have applied the loss in the contract price as the rule for damages are: United States v. Northern Pacific Ry. Co. (D.C.Minn.), 116 F.Supp. 277 (holding plaintiff to a contract price which was less than the evidence of market value of potatoes); Parish and Parish Mining Co. v. Serodino, Inc., 52 Tenn.App. 196, 372 S.W.2d 433; Coulter v. Gulf, C. & S. F. Ry. Co., Tex. Civ.App., 248 S.W. 788; and Chicago, R.I. & P. Ry. Co. v. Burkholder & Tuggle, 129 Ark. 316, 195 S.W. 1073, 1075[4]. In Atlantic Coast Line Ry. Co. v. Roe, 96 Fla. 429, 118 So. 155, a case applying the federal statute of recovery of "full actual loss", the reason for the exception to the general rule is stated, "The basic thought underlying the federal statutes which define the liability and prescribe the measure of damages in cases of this kind is that the owner shall be made whole by receiving the proper money equivalent for what he has actually lost, or, in other words, to restore him to the position he would have occupied, had the carrier performed its contract." It was pointed out that the usual case of application of "market value" measure of damages is where the *consignee* sustains the loss and is forced to go to the open market to procure like property.

Such a case was Great Atlantic & Pacific Tea Co. v. Atchison, T. & S. F. Ry. Co., (C.A.7th), 333 F.2d 705, cited by appellant.

Citing 13 C.J.S. Carriers § 264, p. 615, appellant says that the "before damage" value of the shipment is the fair market value and not the contract sale price, *unless* the carrier had been notified prior to shipment that the goods had been sold for a higher price than the fair market value in which event, the contract price became the "before damage" price. Appellant correctly says that there is no evidence that it had been notified of any such higher price, and that respondent's case thus fails. The above cases applying the contract price rule for a shipper's damages make no such requirement. Under the facts of this case the more reasonable rule is that respondent is entitled to damages for the loss of its bargain.

■ There is sufficient evidence to show that respondent received its order from First National Stores, and accepted it by filling the order and shipping it for a total contract price of $11,859.20. Appellant says that there is no evidence that the price for which the spoiled meat was sold was the best price obtainable or was the fair market price. The shipment was perishable. It was loaded on a trailer on a railroad car for which demurrage was chargeable. Respondent proceeded to dispose of it immediately and did so, thus mitigating its damages as required (see 13 C. J.S. Carriers § 270, p. 620). The price received for the damaged meat was some evidence of its value. See Howard Nat. Bank & Trust Co. v. Jones, Mo.App., 238 S.W.2d 905, 911, where, in a conversion case there was evidence that plaintiff's car was purchased by defendants for $1,090.00 and sold by them on the same day for $1,290.00 (the conversion). The court said, "Evidence of the purchase price paid by defendants, and the price obtained by them on said February 28, 1946, was competent evidence of value." See also the there cited case of Parmenter v. Fitzpatrick, 135 N.Y. 190, 199, 31 N.E. 1032,

1034, 1035, where it was said, "I think evidence of the price obtained at a private sale of chattels, made in a *bona fide* manner, and not for the purpose of establishing a price, has been held competent in this state for many years. It has been admitted because it was evidence of an actual transaction between parties interested in the price of the article, the one to get the highest, and the other to pay the lowest, price for the property; and the fact that these diverse interests agreed upon a price was, in the nature of the question, some evidence of the value of the property sold."

Appellant's cited case of Meletio Sea Food Co. v. Gordons Transports, Mo.App., 191 S.W.2d 983, is distinguishable on its facts that the shipper lost no profit—he was able to replace the damaged portion of the shipment at his cost and sell it to the same customer at the previously agreed contract price. Manifestly correct here, under the reasoning of the Roe case, supra, is respondent's recovery.

Because of the ruling above that respondent is entitled to recovery of its loss under its contract price, appellant's claim that the case should have been submitted under MAI 4.01 or 4.02 must be denied. MAI 4.01 provides for recovery of any damages sustained as a direct result of the occurrence mentioned in evidence. MAI 4.02 provides for recovery of the difference in the fair market value of the property before and after damage. The correct guide for the jury under the cases applying the Carmack-Cummins Amendment is embodied in Instruction No. 5, given by the court: "If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you may find from the evidence to be the differences between the contract price of the meat in an undamaged condition and the sale price of the meat in a damaged condition, plus demurrage and interest from the date of delivery." There was no applicable MAI instruction which was appropriate to be given under the evidence and respon-

dent's theory of the case. The court therefore properly gave Instruction No. 5 under Civil Rule 70.01(e), it being simple, brief, impartial, free from argument, and importantly, a correct statement of the law.

The judgment is affirmed.