SHIPPEN, President:
 

 —The motion for a new trial in this cause has been made on several grounds:—1st. Because the jury have misbehaved, in adopting an improper mode of estimating the damages; by setting down each the particular sum he thought just, and then dividing the aggregate by the number of jurymen. 2d. Because the damages are said to be excessive. 3d. Because the verdict was contrary to the evidence. And, 4th. Because it was founded on a mistake in point of law; the jury supposing that, on payment of the damages, the Negro, (whose freedom was in question) would be emancipated.
 

 New trials are frequently necessary, for the purpose of attaining complete justice; but the important right of trial by jury requires they should never be granted without solid and substantial reasons; otherwise the province of jurymen might be often, transferred to the judges, and
 
 they
 
 instead of the jury, would
 
 *56
 
 become the real triers of the facts. A reasonable doubt, barely, that justice has not been done, especially in cases where the value or importance of the cause is not great, appears to me to be too slender a ground for them. But, whenever it appears with a reasonable certainty, that actual and manifest injustice is done, or that the jury have proceeded on an evident mistake, either in point of law, or fact, or contrary to strong evidence, or have grossly misbehaved themselves, or given extravagant damages; the Court will always give an opportunity, by a new trial, of rectifying the mistakes of the former jury, and of doing complete justice to the parties.
 

 The first objection, as to the manner of the jury collecting the sense of its members, with regard to the quantum of damages, does not appear to us to be well founded, or at all similar to the cafe of calling lots for their verdict. In
 
 Torts
 
 and other cases, where there is no ascertained demand, it can seldom happen that jurymen will, at once, agree upon a precise sum to be given, in damages; there will necessarily arise a variety of opinions, and mutual concessions must be expected; a middle sum may, in many cases, be a good rule; and though, it is possible, this mode may sometimes be abused by a designing juryman, fixing upon an extravagantly high, or low sum, yet unless such abuse appears, the fraudulent design will not be presumed.
 

 The 2d and 3d objections may be considered together.
 

 The action is brought upon a bond, given to the sheriffupon his executing a writ of
 
 Homine replegiando.
 
 The condition is for prosecuting with effect, and for making a return, if awarded. The plaintiff discontinued his suit, and no return has been made; of course, if the case was divested of its particular circumstances, the defendants would be liable for the payment of damages, equal to the value of the thing replevied. The question then, upon the trial, was; whether the circumstances were such as, in justice and equity, ought to discharge the defendants, from the legal obligation they were under, to return the Negro, or pay the price of him.
 

 Many circumstances were given in evidence; but the most, material one in favour of the defendants, was, that when the writ of
 
 Homine replegiando
 
 was delivered to the sheriff to be executed, he was instructed by the defendants, or their counsel, not to take the Negro out of the possession of the mailer; but to leave him in his hands, during the dispute; that he was accordingly left in his possession, and from thence it was concluded that he, the master, and not the sureties, became responsible for him. The evidence upon this point comes from the sheriff himself ; who, by consent, was sworn as a witness ; he proved the leavinthe Negro in his master’s house, when he executed the writ, and that he did not either take charge of him, or deliver him
 
 *57
 
 from his confinement, but he says that some short time afterwards, the master brought the Negro to his office, to deliver him up, and he refused to take him ; and ordered him to return to his matter. There is some evidence of his being afterwards seen at his matter's house; but he was finally abandoned, and has never since returned. In the charge to the jury, the Court told them, that though this was an irregular way of executing, the writ, yet if they were satisfied, from the evidence, that the Negro was actually left in the hands of the master, with
 
 his own
 
 consent, and that he had either expressly, or impliedly, engaged to take charge of the Negro, during the dispute, it would be unjust to make the defendants answerable for him, contrary to the master’s own stipulation and agreement; and,
 
 in that
 
 case, they ought to give damages, only in proportion to the actual loss of service the master had sustained, through the, fault of the defendants. The evidence, in my opinion, preponderated in favour of the master's acquiescence in the directions given to the sheriff; but the jury appear to have thought otherwise ; they probably considered, that when the sheriff went to execute the writ, he did not find the master himself at home; but mentioned his business only to his wife; that there was consequently
 
 no express acq
 
 uiescence on the part of the master; that,
 
 as to the time
 
 he kept the Negro, after the service of the writ, from whence an
 
 implied
 
 acquiescence might be presumed, there was some uncertainty in the evidence; the sheriff, who spoke to the time which had elapsed before he was brought to his office, expressing himself with great caution, and not being able to ascertain it with any degree of precision, although he rather thought it might be about a month or six weeks; and that notwithstanding what had passed, he had actually returned, that he had replevied the Negro. They might likewise have balanced the testimony of
 
 Israel Jacobs,
 
 with that of
 
 Thomas
 
 Har
 
 rison
 
 ; although I own I should have put more reliance on the positive evidence of the latter, than the negative evidence of the former. However, as in this case there was no direct proof of an acquiescence, but the evidence of it arose from presumption, and inferences drawn from the circumstances attending the case, we think it was properly with the jury to decide upon those circumstances, and that their verdict cannot be said to have been given contrary to that plain evidence, which ought to induce us to set it aside; although we might not have drawn the same inferences which they did.
 

 As to the supposed mistake in the jury, it must be observed that as the
 
 Homine replegiando
 
 was not prosecuted with effect, the plaintiff having discontinued it, and the Negro never returned, the defendants were legally answerable upon their bond; and as the jury were of opinion, there were no such equitable
 
 *58
 
 circumstances, as ought to discharge them from their obligation, the price of the Negro was, in that view of the evidence, the proper measure of damages; which, if accepted by the master, will in equity, and perhaps by operation of law too, emancipate the Negro; he having been a party to the
 
 Homine replegiando,
 
 and a full satisfaction, equal to his value, made by his sureties for him.