**MICHAEL LAVERY, defendant below, plaintiff in error, v. WILLIAM WOODLAND and MARY WOODLAND, Administrators of Abraham Woodland, plaintiffs below.**

High Court of Errors and Appeals. June 18, 1817.

*Ridgely's Notebook I, 23.*

302

June 12, 1817, Court of Errors and Appeals, hearing this day.

*McLane* for plaintiff in error, defendant below.

*Rogers* for defendant in error, plaintiff below.

*McLane* for plaintiff in error reads record. Several questions in this case. First, an action of trover will not lie by a citizen of Maryland against a citizen of Delaware for a slave. It is against the policy of law that slave be brought into state. 2 Del.Laws 886, that negro or mulatto slave brought into this state for sale or otherwise is declared free. Verdict in trover operates as sale, and vests property in the defendant. Amount of damages is considered as price of the thing. 5 Bac.Abr. 257A. If plaintiff in trover recover damages, property vests in defendant and damages are the price. Str. 1087, 1078; 2 Dall. 57, 58. Here is the actual owner. If he chooses to send a slave in Delaware, and action of trover is brought and [there is] recovery, property is vested in defendant, and then a sale is made contrary to law. Party may have his action of replevin and recover the Negro himself. So if Negro is a slave, under Act of Congress, he may recover Negro.

Second, under circumstances of this case, the Negro was free and could not be recovered in trover. The mother was a slave and had the child. She was freed, and by consent of master she kept the child and reared [it], and if she brought child into state it became free. Act of Assembly, 2 Del.Laws 886, Negro brought into state for sale or otherwise is to be free. Policy of the laws of this state that slaves brought from Maryland should be free. This law ought to [be] applied to third persons, otherwise a slave lent or hired may be brought in. If master hires a slave, and he brings him into state, slave free and bailee answerable; penalty on individual, and, if he places slave in hands of another person, he will be free if brought in by such person. Act of Assembly makes exception, 2 Del.Laws 888, s. 10. This [is] not within ex-

ception, consequently [slave is] free. 2 Del.Laws 941, slaves devised etc., excepted. The slave was confided by the master to the mother. She brought him here, and is bound by her to Michael Lavery; this is not within exception, [and] slave free. Question, whether owner to be prejudiced by the act of the mother or this third person. 3 Cranch. 324, *Scott vs. Negro London.* Whoever brings a Negro into state having the control over him, and does not comply with the Act, the Negro is free. It is not necessary that the true owner should bring him. It does not alter the case that this child was brought in by the parents, or by persons poor. We must look to see who, or who he is brought in. In case of hiring, if the hirer brings him in, he is free. Slave need not be brought by express consent of master. If slave runs away, or is stolen and brought in, he is not free, but, if he is brought in by one intrusted with him by the master, then the slave will be free.

Third, the Court ought to have directed that, if the slave was brought by the tacit consent of owner, she was free. (NOTE. If owner consented, or permitted or suffered by negligence, or did not in a reasonable time recover or bring back the slave, then it was the act of the owner.)

Fourth, the Court gave an erroneous opinion that there was no wrongful conversion by Lavery. See the Bill [of] Exception. If *A* finds goods of *B* and hold them for true owner on demand, no wrongful conversion, and trover will not lie. Bulst. The holding [of the] Negro under indenture would not permit Lavery to give her up before owner established his right; this not wrongful conversion. Parents, bailees, if they used her for other purposes than for what child was put into their possession, they [were] guilty of conversion; but not Lavery who held under the indenture.

Fifth, trover will not lie when a fair transfer of property. Mr. Woodland should suffer and not Lavery if the parents transferred the girl.

Sixth, if suit had been brought against parents, they would have had a lien for maintaining the child, and plaintiff could not have recovered without a tender. Lavery supported the Negro. got title from them. He had a lien both for his own expenses and for the parents' expenses.

Seventh, that administrators did not file these letters of administration with proper officer. 1 Del.Laws 82.

*Rogers* for defendant in error. First, as to letters not being filed with proper officer. It does not appear whether letters were, or were not filed in Register's office. The fact could not appear in this record by the act of plaintiff below, but the defendant be-

low should have brought forward the objection by plea in abatement. If he would not take advantage below, he cannot here.

Second, as to lien of the parents of child. Lien belongs to few persons; tavern keepers, for they are bound to provide for travellers; so mechanics have a lien on property confided to them in the course of their trade. Lien is predicated on contract. No evidence of contract here, by owner with the mother for the maintenance. The matter of lien is not introduced into the record.

Third, as to conversion. Certainly a man who has found goods has a right to hold them for the true owner. The opinion of the court is correct. The affair of indentures only proves that defendant below did not obtain possession tortiously. But after demand they do not disprove the conversion. The indentures do not make the possession a better one than if slave had been deeded by owner, for a demand and refusal in both cases would make conversion.

Fourth, as to freedom of girl. It does not appear how the parents obtained possession of the girl. But this girl was not free according to the Act. The Act intended to prevent the introduction of slaves. It was to prevent traffic in slaves. Our laws permit slaves to be introduced; they may be attached. So slaves given by will may be brought here. Whether a slave brought without permission of master can contravene the law. She was brought in in a manner contravening the laws. A slave sent into state with a load of wheat does not contravene the law, for he is not brought for traffic. A slave brought here to reside, to become an inhabitant, or become a resident, becomes free, for the Act intended to prohibit the introduction of slaves, except in the cases excepted. It was not merely to prevent a traffic in slaves, but also to prohibit any new additional slavery. If a slave runs away, and the master negligently permits him to remain here, he is free. Any bringing in of a slave, or suffering a slave to be or continue here, makes him free, but the actual assent to his introduction not necessary. 3 Cranch 324.

Admitting the law is contravened, it is not the act of plaintiff. He finds property here, and defendant holds it, and yet says trover will not lie for Negro will be free. In replevin, damages could only have been eventually recovered. In trover he might have moved the court to deliver over the Negro. It does not appear from record that plaintiff is citizen of Maryland, but if he is a citizen of Maryland, he is entitled to same privileges as citizen of Delaware.

*McLane* for plaintiff in error. If slave is brought in state by third person who has possession of slave by the permission of the

master, the slave is free. This Negro is entitled to her freedom,. and is to have the benefit of the master's violation of the law, and not Lavery. Law to prevent introduction of slaves. Cranch. is in point, in the reasoning of Judge Marshall and of Cranch himself.

As to letters of administration, the ground of exception is that they were not given in evidence. He may bring his suit before he files his letters. He may file his letters at any time before judgment and therefore could not be plead in abatement. Contract, express or implied, makes the lien. When the parents by permission of master took the slave, that makes contract. Master bound to support slave. This objection not necessary to have been made below. Court was bound to charge right, because it appears from testimony that parents had a lien.

If Lavery had delivered the girl on the claim of plaintiff, he could have been sued on the indenture. He then could not be guilty of conversion. The right of master must have been first established in law.

CHANCELLOR RIDGELY. The question here is whether the master, a citizen of the State of Maryland, can recover in an action of trover for a slave. It is objected: first, that a citizen of Maryland cannot sell a slave into the State of Delaware; and secondly, that a recovery of damages in an action of trover operates as a. sale.

The Constitution of the United States, Art. 4, s. 2, ordains that the citizens of each state shall be entitled to all the privileges. and immunities of citizens in the several states. If a citizen of Maryland cannot recover in an action of trover in this state against a citizen of Delaware for the conversion of his slave, such citizen of Maryland will not be allowed to enjoy all the privileges of a citizen of the State of Delaware. A redress of the private or civil rights belonging to individuals is certainly one of the privileges secured to the citizens of other states. This redress, or the exercise of this privilege, must be commensurate with the wrong and must be adapted to it, and must be obtained or exercised in the same manner and form of suit as if he were a citizen of the state. The Constitution certainly meant to place, in every state, the citizens of all the states upon an equality as to their private rights, but not as to political rights. A citizen of another state may pursue the same legal remedy by suit or action at law, whenever his right is invaded, as a citizen of the state is entitled to,. but he is not entitled to the same political rights. As long as he remains a citizen of another state, he cannot enjoy the right of

suffrage nor be elected to a seat in the legislature; because these are privileges which can be exercised in one state only, and by those only who are bound by the same political compact and are obliged to support the government and to contribute with his purse and person to the exigencies of the state. If the operation of our laws should restrain them to one particular kind of action, or deny to them the remedy best suited to their case, their privileges would be reduced, by the form of action, to a restriction of their constitutional rights. Therefore if the recovery of damages in this action of trover were to operate as a sale of the slave, I do not think that it would affect the question.

But, secondly, I am not satisfied that a recovery of damages would have this consequence. In support of this position, the counsel for the plaintiff in error cited 5 Bac.Abr. 257, Str. 1078, and 2 Dall. 57, 58. The case in Strange referred to in Bacon's Abridgement is *Adams v. Broughton,* which is also reported in Andr. 18. That was an action of trover brought by *A* against *B* for yarn, after the same plaintiff had recovered against one Mason for the same yarn. The court there said that the property of the goods was altered by the judgment against Mason, and the damages recovered in the first action were the price thereof; so that the defendant in the first action had the property therein, the same as the original plaintiff had, and this against all the world. And in Cro.Jac. 73, *Brown v. Wootton,* a judgment in trover was allowed to be pleaded in bar to a second action by the same plaintiff against a different person for the same cause. The reason is, because the party can recover but one satisfaction for the same injury; and after one recovery, whatever right the plaintiff had, he never can proceed afterwards against another person for further satisfaction. So when the matter in contest is not an article of property, as in trespass, a plaintiff can have but one satisfaction, although there are several trespassers. Hob. 66; 1 Wils. 30; 3 Leon. 22. So, if a servant bound in a penalty not to leave his master's service is enticed away by another, and the master recovers the penalty against the servant, he cannot recover damages against the enticer, 3 Burr. 1345, because he has received complete satisfaction, and therefore all the injury is done away. And further, that a recovery against the seducer would fall on the servant, for his employer would pay no more than he estimated the worth of his services to him.

The general principle of these cases is that a party can receive but one satisfaction for the same injury. And therefore if the suit be brought for a dead chattel, the person having paid the damages for converting it to his own use never can be again dis-

turbed by the true owner, because he has once been satisfied. One who has a special property may recover in an action of trover, as in the case of a chimney sweeper's boy who found a jewel, *Armory v. Delamirie* [1 Str. 504]. There it was held that though the plaintiff did not by such finding acquire an absolute property, yet he had such a property as would enable him to keep it against all but the rightful owner. Lawrence, J., in 7 Term 391, in the case of *Webb v. Fox,* in speaking of special and absolute property, says, "Absolute property is where one, having the possession of chattels, has also the exclusive right to enjoy them, and which can only be defeated by some act of his own." According to this doctrine, which I hold with, a recovery in trover by one who has special property, will not operate as a sale against the true owner. For in many instances, he who has special property cannot be pretended to hold with the assent of the owner, as in the case of the lost jewel; for there no assent could be given, the jewel having been lost, and the owner not known.

As to the slave, the subject matter of the present suit, she stands on different grounds from a mere dead chattel. She has certain rights, and the state has prescribed certain rules which cannot be violated; but still, those rules do not deny to the plaintiff this form of action. It is unlawful to sell a slave from Maryland into this state. It is not easy to imagine how, by the operation of law, contrary to this Act of Assembly, she can, by any mode, become the slave of the plaintiff in error. Suppose that she cannot become his slave, still the defendant (the plaintiff below) has a right to any form of action which he adjudges most suitable to his case. The form of this action does not alter the law. 7 Term 397. The defendant below (plaintiff here) might bring the Negro into court, according to 3 Burr. 1363, and then no law would be broken, and there would be no danger of a sale of a slave into the state. But if he has chosen to hold out, he may be said to have brought the slave into the state. The case in 2 Dall. 57, 58, in the suggestion about the emancipation of the Negro, turns on the full satisfaction received by the master.

Several of the errors assigned and a considerable part of the argument of the counsel of the plaintiff in error were directed to the freedom of the girl, and that, because she was free, the plaintiff below could not recover.

It was urged that she became free by the manner in which she was originally brought into the state. And the case of *Scot v. Negro London,* 3 Cranch 324, was cited to this purpose; but that case does not apply. If it does, it is an authority against the plaintiff in error here. By the Virginia Act of Assembly, De-

cember 17, 1792, it was enacted in these words: "Slaves which shall hereafter be brought into this Commonwealth and kept therein one whole year together, or so long at different times as shall amount to one year, shall be free." Then it was provided that the Act should not extend "to those who may incline to remove from any of the United States and become a citizen of this, if within sixty days after such removal, he shall take the oath prescribed in the Act." *A*, the father of *B*, the defendant below and plaintiff in error, claiming the Negro as his slave, without the knowledge or consent of *B*, in July 1802 took the slave from Maryland to Alexandria and hired him out until *A's* death, which happened about Christmas this same year. The slave resided in Alexandria, except about three weeks in April, 1803, until 1806. *A* never took the oath required by the Act of Assembly. *B*, in March, 1803, got possession of the slave, and in April following, then being a resident of Maryland but intending to remove to Alexandria, hired him in Alexandria, claiming him as his slave under a bill of sale from T. Contee, dated September 3, 1800. *B* came from Maryland in June, 1803, and on July 5th next following took the oath prescribed by the Act of Assembly. The Supreme Court of the United States was of opinion that if the owner of a slave removing into Virginia shall take the oath within sixty days after the removal of the owner, it shall prevent the slave from gaining his freedom, although he was brought into Virginia by a person claiming and exercising the right of ownership over him eleven months before the removal of the true owner, and although the person who brought him in never took the oath and although the slave remained in Virginia more than twelve months, and although the true owner never brought him in. The court seems not to have considered nor to have given any opinion how far the true owner would have been affected if he had not removed into Virginia, and if the person taking the Negro, and claiming him as his slave, had not taken the oath before the expiration of the year.

If the case has any application, it is rather against the plaintiff here. Cranch's note, which is a comment on the opinion of the Supreme Court, written under evident mortification, places the question on the taking the oath by the person in possession of the slave, under whose control he was and who claimed and exercised over him the authority of an owner. Both opinions turn on the acts of the supposed or actual owner, that is, taking the oath: one within sixty days, the other within the year, before the right to freedom attached and within sixty days after the true owner moved into the state. Here the slave was not brought into this state by the master, nor by any person claim-

ing or exercising any authority or ownership. The parents did not treat or consider the girl as a slave, and therefore their bringing her here was not such an act as entitles her to her freedom under the Act of Assembly. And there is no proof of any assent of the master, either actual or implied. Such an assent might be implied if the master knowingly permitted or suffered her to remain here. For his neglect or omission to take her home, knowing she was in this state, would amount to an assent. I do not think that a master permitting a child, a slave, to reside with its parents in Maryland, and then those parents without the knowledge of the master, removing with the child into this state entitles the child to freedom. It is a fraud on the master.[4]

Although I think that the negro girl would not become the slave of the defendant below by a recovery of the plaintiff below, yet as the verdict is right, and no wrong is done to the party, this is not a just ground for reversal; that is, the charge given by the court that the girl would become the slave of the defendant below.[5]

As to the lien, in this case neither the parents of the girl nor the defendants had a lien. Liens are admitted for the convenience of trade where there is an express contract to that effect, and where it is implied from the usage of trade or the manner of dealing between the parties. Here, if anything is due to the parents or defendant for the maintenance of the girl, they can have their action. See 1 Str. 651, 2 Bl.R. 1117.

As to the letters of administration obtained in Maryland. The Act of Assembly requires that they should be filed, and bond and security given, only when the deceased is indebted to any of the inhabitants of this state for a debt contracted within the same to the value of £20. This ought to be shown by the defendant below, either in his pleading or by evidence. The plaintiff below cannot prove that his intestate was not indebted, for that would be proving a negative. It would perhaps be a proper plea

[4] At this point there is a reference to "Note A" which appears at *Ridgely's Notebook I, 44*, and which reads as follows, "In 1 Wheat. 1 in the case of *Negro Sally Henry, by her father and next friend, v. Ball*, it was determined by the Supreme Court of the United States that the Act of Assembly of Maryland of 1796, c. 67, prohibiting the importation of slaves into that state for sale or to reside, does not extend to a temporary residence, nor to an importation by a hirer or person other than the master or owner of such slave, though the words are general."

[5] At this point there is a reference to "Note B" which appears at *Ridgely's Notebook I, 44*, and which reads as follows, "And in the same case, I Wheat. 1, it was adjudged that if the court below was wrong in the opinion expressed on a particular point, yet, as the error did not injure the petitioner, it was no cause for reversal. This case I did not see until after the judgment in *Lavery v. Woodland's Administrators*."

in abatement. At any rate the defendant below should show it. On the whole I am of opinion that the judgment shall be affirmed.

JOHNS and DAVIS concurred, as likewise did WARNER, who was not present and did not render a judgment below.

Judgment affirmed.