**TROPICAL PAINT & OIL CO. et al. v. SOUTHEASTERN FARM IMPLEMENT CO.**

(District Court, W. D. South Carolina.  February 24, 1923.)

1. **Bankruptcy ☞58—Transfer without intent to prefer creditor not act of bankruptcy.**

   To authorize an adjudication of bankruptcy, it must appear that the transfer alleged to constitute an act of bankruptcy was made with intent to prefer the creditor to whom it was given; a preference without such intent not being an act of bankruptcy.

2. **Bankruptcy ☞91(1)—Intent to create preference implied from transfer while insolvent.**

   Under the rule that one is presumed to intend the probable consequences of his acts, the intent to prefer a creditor may be implied from the actual result of a transfer.

3. **Bankruptcy ☞58—Intent to prefer conclusively presumed from transfer with knowledge of insolvency.**

   If a debtor knows that he is hopelessly insolvent, and transfers property to his creditors, an intent to prefer will be conclusively presumed.

4. **Bankruptcy ☞91(1)—Burden of showing intent to prefer on creditors, where evidence shows alleged bankrupt believed himself solvent.**

   Where the evidence shows that a transfer of property was made by the alleged bankrupt in the honest belief of his solvency, the burden of showing his intent to prefer the creditor to whom the transfer was made shifts to the petitioning creditors.

5. **Bankruptcy ☞95—Evidence tending to rebut presumption of intent to prefer makes question for jury.**

   Evidence by an alleged bankrupt, tending to rebut the presumption that a preference was intended, makes the question one for the jury.

6. **Bankruptcy ☞93—Right to trial by jury of alleged acts of bankruptcy absolute.**

   The right of one alleged to be a bankrupt to trial by jury on the issue raised by his denial of the alleged acts of bankruptcy is absolute, and the court cannot enter judgment contrary to the verdict, but may only set aside the verdict for errors of law as in common-law cases.

7. **Bankruptcy ☞95—Findings of jury not disturbed, unless clearly wrong.**

   In involuntary proceedings, the determination of the jury on issues submitted as to alleged acts of bankruptcy, if sustained by substantial evidence, should not be set aside, unless clearly wrong.

8. **Bankruptcy ☞91(2)—Findings for alleged bankrupt on issues of fraudulent transfers supported by evidence.**

   In involuntary proceedings findings of the jury that transfers by the alleged bankrupt were not given with intent to hinder, delay, or defraud creditors, and not given with intent to create a preference, *held* supported by sufficient evidence.

In Bankruptcy.  Involuntary proceedings by the Tropical Paint & Oil Company and others against the Southeastern Farm Implement Company.  Issues were submitted to a jury as to the alleged acts of bankruptcy, verdict for respondent, and the petitioning creditors move for a new trial.  New trial denied.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Henry K. Townes and Wilton H. Earle, both of Greenville, S. C., for petitioners.

B. F. Martin, of Greenville, S. C., for respondent.

WATKINS, District Judge. This is an involuntary bankruptcy proceeding, begun by the filing of a petition in this court on November 30, 1921. The acts of bankruptcy relied upon are the giving of a chattel mortgage by Southeastern Farm Implement Company on April 14, 1921, to Woodside National Bank, of Greeneville, S. C., and the giving of another chattel mortgage by said company on April 27, 1921, to Chicora Bank of Pelzer, S. C.; the former mortgage being for about $20,-000, and the latter for $42,000; or thereabouts, and both mortgages covering considerable portions of the stock of goods of defendant company. There is in the record no testimony showing just what was the value of the total stock of goods of defendant company at that time; but the evidence of J. M. Palm shows that on September 30, 1921, the stock of goods was inventoried at about $127,000. Chicora Bank mortgage was recorded November 22, 1921, and Woodside Bank mortgage, November 28, 1921. The mortgages were alleged to be fraudulent and preferential, and are therefore set forth as constituting acts of bankruptcy. The answer of the alleged bankrupt is a general denial, and in particular a denial of insolvency, and denial of the alleged acts of bankruptcy, and said alleged bankrupt asks for a jury trial of these issues. There was an order of court, upon which all parties agreed, sending to the jury the following issues of fact:

Question 1. Were the mortgages mentioned and referred to in the petition given by respondent with intention to hinder, delay, or defraud its creditors?

Question 2. Has the respondent established by the preponderance of the evidence its solvency on November 30, 1921, the date of the filing of the petition?

Question 3. Were said mortgages given with intention to prefer some of the creditors over other creditors?

Question 4. Have the petitioners established insolvency of the alleged bankrupt by the preponderance of the evidence when the mortgages were given to the banks in April, 1921?

Question 5. Have the petitioners established the insolvency of the alleged bankrupt by the preponderance of the evidence at the time of the filing of the petition, November 30, 1921?

These issues were tried before a jury in this court January 26 and 27, 1923, and to the first three questions above set out, the jury answered "no"; to the last two, the response was "yes." It would follow that, having committed no act of bankruptcy, the defendant will be entitled to an order dismissing the petition with costs; but the petitioning creditors have moved for a new trial in this case, upon the ground that the verdict is against the evidence and should be set aside. This brings up for consideration the few legal principles that control the disposition of the case and also calls for some consideration of the facts.

1. As bearing upon the question of preference, what is the legal effect of these admitted transfers of a considerable portion of the defendant's property, together with the failure to record the mortgages until November 1921?

The matter of fraudulent transfer will not be considered, since the considerations that dispose of the matter of alleged preferential transfer would also dispose of the matter of alleged fraudulent transfer. From the admitted facts, together with the finding of the jury that the company was insolvent in April and November (although, as will be seen hereafter, said company questions the sufficiency of the evidence to support the finding for April), is there any necessary inference of an intent to prefer any creditor or creditors over other creditors in this case?

"In General.—The second act of bankruptcy consists of a debtor transferring while insolvent any portion of his property to one or more of his creditors with intent to prefer such creditor or creditors over his other creditors. * * * The act itself may not even be illegal or fraudulent. The debtor merely prefers to pay one creditor more than he does another." Collier on Bankruptcy (11th Ed.) § 3a (2), b, p. 98.

[1-4] Defendant's contention is that at the time of the transfers it had no intention of paying one creditor a greater portion of his claim than any other creditor, but meant in good faith to pay all its claims in full.

"To authorize an adjudication of bankruptcy, it must appear that the transfer alleged to constitute an act of bankruptcy was made *with the intent to prefer* the creditor to whom it was given; if no such intent exists, it may be a preference but it is not an act of bankruptcy." Collier on Bankruptcy (11th Ed.) § 3a, (2), (3), p. 102.

"As in the case of a transfer to hinder, delay, and defraud creditors, the intent to prefer may be implied from the actual result of the transaction. One is presumed *to intend* the probable consequences of his acts—that is those consequences which would naturally follow, and which a person of ordinary intelligence would expect as a natural result thereof. This presumption is of weight in determining the debtor's intent to prefer, and has been frequently applied. If the debtor knows that he is insolvent, he must be presumed to know that a transfer made to one creditor to the exclusion of others will result in a preference, without regard to his actual intent in making such transfer. Payment of a claim by one knowing himself to be insolvent raises a conclusive presumption of intent to prefer; if it be shown that it was made in the honest belief that he is solvent, the burden shifts to the creditors." Page 103, supra.

[5] On page 104, same paragraph, the author says further:

"If a debtor honestly believes himself to be solvent when the transfer is made, or if he establishes his want of knowledge of his insolvency, the presumption of an intent to prefer is rebutted."

"Evidence by the alleged bankrupt to rebut the presumption that a preference was intended should be submitted to the jury, and an instruction that the intent to prefer is conclusively presumed is erroneous."

In Re Bloch (C. C. A. 2d Circuit) 6 Am. Bankr. R. 300, 109 Fed. 790, 48 C. C. A. 650, the court said:

"The judge was of the opinion that if, at the date of actual insolvency, as defined by section 1 of the act, the alleged bankrupt paid a considerable debt from the assets of the firm which in fact constituted a preference, he must be held to have intended the consequences of his act, and that the intent to prefer was conclusively established, so that rebutting evidence on the part of the alleged bankrupt must be without effect. In this respect we think that the charge was erroneous. In an involuntary petition, which alleges the act of bankruptcy described in subdivision 2 of section 3, the

petitioner takes the burden of proving the insolvency of the defendant, if he denies the allegation of insolvency and presents himself at the hearing with his books and papers and submits to an examination, and the burden also rests upon the petitioner to prove the intent to create a preference. The fact of an intent sufficiently appears from the insolvency and the preference, if no attempt is made by the defendant to show an absence of intent; but it is permitted to him to show such absence by reason of his entire ignorance of insolvency and a reasonable expectation of ability to pay his debts. Thus, in Wager v. Hall, 16 Wall. 584, the Supreme Court, in construing the thirty-first section of the Bankruptcy Act of 1867, which relates to preferential transfers of property to a creditor by an insolvent, says: 'The transfer by a debtor who is insolvent of his property, or a considerable portion of it, to one creditor as a security for a pre-existing debt, without making any provision for an equal distribution of its proceeds to all his creditors, operates as a preference to such transferee, and must be taken as prima facie evidence that a preference was intended, unless the debtor or transferee can show that the debtor was at the time ignorant of his insolvency, and that his affairs were such that he could reasonably expect to pay all his debts.' * *. * "

The court further said:

"Inasmuch as testimony was given by F. E. Bloch to show the reasonableness of his expectation of being able to carry on the business and an absence of intention to prefer a creditor, the question of intent should have been submitted to the jury."

Of course, if a debtor knows that he is hopelessly insolvent and transfers property to his creditors an intent to prefer will be conclusively presumed. In re Gilbert (D. C.) 112 Fed. 951, 8 Am. Bankr. R. 101, 104. In this case the court said:

"To authorize an adjudication of bankruptcy, it must appear that the transfers complained of were made with intent to prefer the creditors to whom they were made. If the respondent was insolvent, and had knowledge of the fact, an intent to prefer will be conclusively presumed. There is a further presumption that the debtor knows his financial condition as to solvency, but this is a disputable presumption, and, if the debtor honestly believes himself to be solvent, or if he establishes his want of knowledge as to his insolvency, he then rebuts the presumption of an intent to prefer which arises from the fact of actual insolvency. Coll. Bankr. 31."

See, also, In re Rome Planing Mills (D. C.) 96 Fed. 812, 3 Am. Bankr. R. at page 123, where the court held:

"In order to make out a case in an involuntary bankruptcy proceeding based on subdivision 2 of section 3, the petitioners must prove, first, a transfer of the debtor's property to a creditor; second, the debtor's intent to prefer such creditor; third, the insolvency of the debtor at the date of the transfer. The burden of proof is upon the petitioners, except in the contingency provided for in paragraph 'd' of section 3. The intent which must be shown is that of the debtor. * * * The debtor's intent to give a preference may be presumed from a transfer, while insolvent, of a large portion of his property to a single creditor. When this is proved, the burden is upon him to show that he was ignorant of his insolvency and had reason to believe that he could pay his debts in full. The debtor's insolvency must be shown to exist at the date of the transfer. It is not a sufficient defense to a petition alleging acts of bankruptcy under subdivisions 2, 3, 4, and 5, to prove solvency at the time of filing the petition."

In 7 C. J. pp. 51, 52, it is said:

"The intent to prefer is a necessary element of this act of bankruptcy, but it may be inferred from the fact that a preference was the natural result of what was done, or that the debtor knew that he was insolvent at the time. On the other hand, the presumption of an intent to prefer which arises from the fact of insolvency is rebutted, where it is shown that the debtor did not know that he was insolvent at the time of the transfer."

[6] 2. This brings us to the second question of the case: Are the findings of the jury properly supported by the evidence, or should they be set aside by this court? Let us consider, first, when it is the duty of the court to set aside the verdict in a case of this character; and, second, the evidence in the case tending to support the verdict. In Cowperthwaite v. Jones, 2 Dall. 55, 1 L. Ed. 287, it is said:

"New trials are frequently necessary, for the purpose of attaining complete justice; but the important right of trial by jury requires they should never be granted, without solid and substantial reasons; otherwise, the province of jurymen might be often transferred to the judges, and they, instead of the jury, would become the real triers of the facts."

In Elliott & Co. v. Toeppner, 187 U. S. 328, 23 Sup. Ct. 133, 47 L. Ed. 202, the court considered section 19 of the Bankruptcy Act (Comp. St. § 9603), providing the right of jury trial in involuntary bankruptcy cases, saying:

"The right to a trial by jury on written application thus given is absolute and cannot be withheld at the discretion of the court. In that respect it differs from the trial of an issue out of chancery, which the court of equity is not bound to grant, nor bound by the verdict if such trial be granted. The court cannot, as the chancellor may, enter judgment contrary to the verdict, but the verdict may be set aside or the judgment may be reversed *for error of law* as in common-law cases. * * * The proceedings in administration of the estate are equitable in their nature, but the bankruptcy courts act under specific statutory authority, and when on an issue of fact as to the existence of ground for adjudication a jury trial is demanded, it is demanded of right, and the trial is a trial according to the course of the common law."

The Supreme Court referred, approvingly, to the case of Duncan v. Landis, 106 Fed. 842, 45 C. C. A. 666, opinion of the Circuit Court of Appeals for the Third Circuit, "whose opinion by Gray, J., contains a lucid exposition of the general subject." In that case the court was considering the same section of the Bankruptcy Act, and said:

"This trial by jury was a matter of right, and could not be denied if seasonably demanded. The verdict of the jury was conclusive of the issue of fact, and binding upon the court."

Citing federal and South Carolina cases, we find the following in 29 Cyc. 825, 827:

"It is usually held that a new trial should not be granted because the verdict appears to be against the mere preponderance of the evidence, or merely because the trial judge would probably have reached a conclusion different from that of the jury. Where the evidence was so conflicting that different persons might honestly and intelligently have formed different conclusions therefrom, the verdict should stand."

See, also, Hughes v. Railway Co., 107 S. C. 503, 93 S. E. 187, holding that it was error to set aside a verdict for lack of evidence to support it, when more than one inference could be drawn from the testimony.

See, also, Robinson v. Telegraph Co., 101 S. C. 20, 85 S. E. 436, where the court says:

"It would rob the jury trials of all of their safeguards if the court should hold that it will reject all judgments based upon statements that do not accord with the individual opinions of the members of this court, as to what a man would do under a given set of circumstances."

[7, 8] In the light of these principles we will now consider whether there was substantial evidence before the jury to support its findings in response to questions 1 and 3. The determination of the issues submitted thereunder was peculiarly the province of the jury, if sustained by substantial evidence, and its findings thereon should not be disturbed unless, in the opinion of the court, clearly wrong. Bearing on the question of the bona fides of the mortgages in question and upon respondent's purpose and intention in their execution, it submitted testimony to the following effect:

The company was organized as a partnership in 1918, and was incorporated under the name of Southeastern Farm Implement Company in the latter part of 1919; its stockholders being John A. Hudgens, C. C. Hindman, J. D. Spence, and J. H. Shearer. The year 1920 was a year of great activity in business, and it appears that during the latter part of the year the company became heavily indebted and greatly overstocked. J. D. Spence had charge of the business as its manager until the early part of 1921, when he sold out, withdrew from the business, and engaged in business upon his own account. When this happened, C. C. Hindman, vice president, assumed active charge of the business, of which he had but limited previous knowledge. Deflation had then set in, and Chicora Bank of Pelzer and Woodside National Bank of Greenville, two of the largest creditors, soon insisted on either payment or security of their claims. There is evidence that Hindman was a man of considerable business enterprise and ability, and enjoying an excellent credit with the business world at that time. Hudgens, the president of the company, had never been charged with the active direction of the details of the business, and not far from the time when Hindman took charge, Hudgens was compelled to go away on account of his health. There is no exact testimony as to the amount of assets and liabilities of the company when the mortgages were given, but the inventory taken in the fall of 1921 showed inventoried assets exceeding liabilities. Hindman's testimony is to the effect that, when the mortgages were executed, he had the agreement of the banks and of two other large creditors to extend the time of the payment of their obligations and allow him meanwhile to pay off other and unsecured creditors. At the time the mortgages were executed, or shortly thereafter, Hindman and Hudgens personally indorsed the notes to the banks. They were already indorsers on some of these obligations, but Hindman's indorsement was increased by about $20,000. His testimony that he then thought that he could pull the business through and pay all creditors in full is uncontradicted, except in a general way, by the testimony regarding the general status of the business and business conditions.

It is well known that the progress of deflation and upheaval of business conditions became greater and more disastrous as the year 1921

progressed than was anticipated by the average business man. I am unable to say, therefore, that there is lack of substantial support in the evidence of the jury's finding that in the execution of the mortgages, there was no intention to hinder, delay, or defraud creditors or to prefer some creditors over others. Entertaining this view, it becomes unnecessary to consider respondent's suggestion that the verdict of the jury should be sustained upon the additional ground that there was no evidence sufficient as a matter of law to sustain the verdict of the jury upon the issue of insolvency. I may add, however, that the evidence upon this point is rather inferential than direct, and I am inclined to the opinion that in arriving at its conclusion the jury based its finding to too great an extent upon the investigation which was made on behalf of petitioners in the latter part of the year 1922. I was impressed at the time of the trial with very grave doubt as to whether there was sufficient evidence to justify the conclusion that respondent was insolvent at the time of the execution of the mortgages, or even at the date of the filing of the petition.

For the reasons stated above, a motion for a new trial must be overruled. Whereupon, after due consideration, it is ordered that petitioners' motion for a new trial herein be and the same is hereby refused.