## CUDAHY PACKING CO. v. CITY OF OMAHA et al.

Circuit Court of Appeals, Eighth Circuit.
January 10, 1928.

Rehearing Denied March 14, 1928.

No. 7478.

1. **Exceptions, bill of ☞38—Where evidence in former trial was considered at new trial, proceedings at former cannot be denied consideration on appeal because bill of exceptions was not filed within term.**

Where verdict was directed for plaintiff, but defendants' motion for new trial was granted, and second trial had, at which all evidence in former case was considered, proceedings at first trial cannot be denied consideration on appeal, on ground that bill of exceptions was not filed within term, nor within any extension thereof, since there was no final judgment until in second trial.

2. **Exceptions, bill of ☞40(1)—Court, having during term granted time beyond term for filing bill of exceptions, may grant further extension before expiration of previously granted time.**

Where court, during term at which motion for new trial was overruled, granted 60 days for filing bill of exceptions, and such bill was tendered within such period, but after expiration of term, court *held* to have power to make further extension of time for filing to allow counsel to examine bill.

3. **Exceptions, bill of ☞36(1)—Bills of exception may be signed any time before trial court loses jurisdiction of cause by expiration of term or properly prescribed extension.**

Where there was no standing rule of District Court relative to extension of time for filing bills of exception, they may be signed at any time before trial court loses jurisdiction of cause by expiration of term, or such time thereafter as may have been duly prescribed.

4. **Exceptions, bill of ☞40(1)—Where order intended to extend time for filing bills of exception merely extended time for filing transcript, bill of exceptions held properly filed within extended time.**

Where court undertook to extend time for filing bills of exception, but order only extended time for filing transcript on appeal, bill of exceptions *held* properly allowed and filed within period of extension, since plaintiff in error had right to rely on action of court, and should not be prejudiced, in absence of fault on its part.

5. **Judgment ☞341—All judgments may be vacated or modified during term at which they were rendered.**

General rule is that all judgments, decrees, or other orders of courts, however conclusive in character, are under control of court pronouncing them during term at which they were rendered or entered of record, and that they may then be set aside, vacated, modified, or annulled by that court.

6. **New trial ☞156—Hearing on motions for new trial may be continued from time to time, or term to term, during which judgment is held in abeyance.**

By appropriate order, hearing on motions for new trial may be continued from time to time, and even from term to term, and by them judgment is held in abeyance.

7. **New trial ☞152—Court may permit amendments to motion for new trial at any time before motion is disposed of.**

Court retains jurisdiction to permit amendments to motion for new trial at any time before motion is disposed of.

8. **Appeal and error ☞977(1)—Order granting new trial, being discretionary with trial court, cannot be reviewed in federal courts.**

Order granting or refusing new trial, which court has jurisdiction to make, is discretionary with trial court, and cannot be reviewed on appeal or writ of error in federal courts.

9. **Courts ☞353, 356(2, 9)—Power and practice of federal courts as to bills of exception, motions for new trial, and methods of review are not conformed to state courts.**

Power and practice of federal courts are not conformed to those of state courts in matters relating to bills of exception, motions for new trial, and methods of review of their judgments.

10. **Waters and water courses ☞203(15)—Plaintiff, suing city for refund of money paid for water in excess of rate under contract with city's predecessor, must establish full and complete contract.**

Plaintiff, suing city for money paid for water in excess of rate under contract with company, from which city purchased water plant, *held* required to establish full and complete contract entitling it to relief sought, where answer put in issue existence of valid contract.

11. **Trial ☞177—Moving by both parties for directed verdict waives jury trial and submits all questions to judge.**

Where both sides moved for directed verdict at close of all evidence, effect is to waive jury trial and submit all questions of fact, as well as of law, to judge.

12. **Courts ☞406(1⅜)—Judge's finding, after both parties moved for directed verdict, cannot be reviewed, if supported by any evidence.**

Where both sides moved for directed verdict at close of all evidence, Circuit Court of Appeals cannot review judge's finding, unless there was no evidence on which it can be sustained.

13. **Waters and water courses ☞203(15)—Evidence held to support finding that plaintiff, suing city to recover money paid for water exceeding contract rate with city's predecessor, entered into supplemental agreement with predecessor, releasing it from further obligation, if city raised rates.**

In action by packing company against city furnishing water for refund of amount paid for water in excess of rate under contract with city's predecessor, evidence *held* sufficient to justify finding that supplemental agreement was made between plaintiff and city's predecessor, where-

by latter was released from further obligation in event that city, acquiring plant, should raise rates.

**14. Evidence ☜317(4)—In action against city furnishing water for refund of excess over contract rate with predecessor, discussions among predecessor's officers held inadmissible as direct evidence of supplemental contract with plaintiff.**

In action against city furnishing water to recover excess paid over contract rate with city's predecessor, testimony of officers of city's predecessor as to discussions among themselves and with their attorney relative to supplemental agreement with plaintiff *held* inadmissible, as hearsay, as direct evidence of existence of such supplemental contract.

**15. Evidence ☜444(2)—In action against city furnishing water to recover excess over contract rate with predecessor, discussions among predecessor's officers as to supplemental contract held admissible to explain execution of contract fixing rate.**

In action against city furnishing water for excess over contract rate with city's predecessor, testimony of officers of city's predecessor as to discussions among themselves and with their attorney relative to supplemental contract with plaintiff *held* admissible to show attitude of such company, and to explain execution of contract fixing rate.

**16. Waters and water courses ☜203(7)—Contract between water company and consumer, releasing company from obligation if city, purchasing plant, raised contract rate, relieved city's obligation under deed, transferring plant subject to obligations entered into by company.**

Where water company entered into contract with plaintiff fixing certain rate, and afterward sold plant to city, supplemental contract with plaintiff, under which water company was released from further obligation if city, on acquiring plant, raised rate above contract price, *held* sufficient to relieve obligation of city under deed transferring plant subject to obligations entered into by predecessor company with private consumers.

**17. Waters and water courses ☜203(11)—City purchasing water plant may fix reasonable rates, superseding lower contract rates of predecessor.**

City purchasing water plant may, as valid exercise of police power, fix reasonable rates for supplying water, superseding lower rates agreed on in contracts made previously between predecessor company and its consumers, since such action would not impair obligation of contracts, nor deprive consumers of property without due process.

**18. Waters and water courses ☜203(12)—Increase in water rates by city purchasing water plant cannot be reviewed, if reasonable and necessary.**

Where city purchasing water plant fixed rate for private consumer higher than rate agreed on in contract with city's predecessor, and increase was reasonable and necessary, city's action in making it cannot be reviewed.

**19. Waters and water courses ☜203(11)—City of Omaha, purchasing water plant extending into South Omaha, held authorized to fix rates in South Omaha.**

City of Omaha, Neb., purchasing water system extending into South Omaha, *held* authorized to fix rates in South Omaha, regardless of power of mayor and council of latter city to make such rates, since system was entire and purchased as a whole, so that authority to fix rates must apply to system as a whole.

**20. Trial ☜177—Plaintiff, not withdrawing motion for directed verdict when court indicated defendant should file such motion, held bound as in case of joint motion.**

Where court, while indicating that in its judgment defendants should file motion for directed verdict, plaintiff having already filed such a motion, stated fairly what effect of such joint submission would be, and plaintiff made no effort to withdraw its motion, but defendants filed theirs, plaintiff was bound as in case of joint motion for directed verdict.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by the Cudahy Packing Company against the City of Omaha and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Yale C. Holland, of Omaha, Neb. (Thomas Creigh, of Chicago, Ill., and J. A. C. Kennedy, George L. De Lacy, and Charles F. McLaughlin, all of Omaha, Neb., on the brief), for plaintiff in error.

John Lee Webster, of Omaha, Neb. (Dana B. Van Dusen, of Omaha, Neb., on the brief), for defendants in error.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and OTIS, District Judges.

VAN VALKENBURGH, Circuit Judge. In 1903 the Legislature of the state of Nebraska passed an act (Laws 1903, c. 17) which, in effect, required the city of Omaha to buy or build a system of waterworks. The plant in Omaha, embracing works in South Omaha, was then owned and operated by the Omaha Water Company. March 2, 1903, engineers were appointed to appraise the value of said system of waterworks as a preliminary to the purchase thereof by the city. June 1, 1904, the Omaha Water Company entered into a contract with the Cudahy Packing Company, under the terms of which plaintiff in error was to receive water at 4½ cents per thousand cubic gallons for a period of 10 years from date. In view of the impending purchase of the waterworks by the city, and uncertainty in the minds of the contracting parties as to the power of the city

over rates as affecting existing contracts, and as to what the policy of the city might be in that regard, all previous contracts between the water company and plaintiff in error, and between the company and others similarly situated, had contained a clause providing that such contract should terminate upon acquisition of the plant by the city. This last-named contract between the water company and the Cudahy Company on its face did not contain that clause.

Thereafter the purchase of the water plant by the city was consummated. The deed to the city was dated June 20, 1912, and filed for record July 1, 1912. That deed contained the following clause: "Subject, nevertheless, to the obligations entered into by the said Omaha Water Company with private consumers in said city of Omaha, and in the cities of South Omaha * * * and with said municipalities under or by virtue of any of the ordinances, agreements, and arrangements heretofore set forth."

The contract between plaintiff in error and the water company had then still 2 years to run. Upon assuming control of the works on behalf of the city, the water board of Omaha raised the rates to plaintiff in error, and those similarly situated, from 4½ cents to 8 cents per thousand cubic gallons. Preceding this action there were hearings before the board in which representatives of plaintiff in error appeared. The finding was that the city could not furnish water at 4½ cents per thousand gallons without loss, and that a rate of 8 cents was essential. Plaintiff in error protested against this raise in rate, paid the increase under protest, and at the close of the 2-year period brought this action to recover the excess paid over the contract rate.

At the trial the District Court directed a verdict against the packing company on the ground that the water company could not bind itself to any private consumer by contract in such manner as to affect the right of the state under its police power to control the rates charged. This was the main ground of contention in that trial. This court reversed that judgment, holding that the city, under its power to purchase the waterworks system and to pay therefor, had full power and authority to agree, as a part of the consideration, that it would carry out and perform the contractual obligations of the water company. 277 F. 49.

At the second trial some amendments were made to its pleadings by the city, the nature of which we think it unnecessary here to consider. They were not deemed sufficient to alter the issues resolved by the opinion of this court, and a judgment was directed, this time in favor of plaintiff in error, in the sum of $81,244.96. This judgment was entered December 13, 1923. A new feature in the testimony of this second trial was that Mr. Theodore C. Woodbury, former president of the water company, testified that at the time the Cudahy contract came up he observed that the termination clause, to which reference has been made, was absent. He had understood that an agreement had been procured whereby the water company would be held harmless as against any claim of the packing company if the city should advance the rates beyond the 4½-cent rate. He understood that Mr. Fairfield, general manager of the company, had this agreement. Defendants in error were granted 42 days in which to file a motion for new trial. The motion was filed January 10, 1924, and thereafter orders were obtained continuing the presentation and hearing of this motion until the April term, 1924. On May 10th, within said April term, counsel for defendants in error asked leave to amend their motion for new trial, setting up evidence newly discovered since the trial of the cause, and to file the affidavits of E. M. Fairfield and Alonzo B. Hunt in support thereof. These affidavits were to the effect that an undertaking was given by the Cudahy Packing Company to protect the water company against any liability due to the change of ownership incidental to the acquisition of the plant by the city. To this proposed amendment, and these affidavits, objections were filed, but were overruled, and a new trial was granted.

At this last trial, from the resulting judgment in which this writ is prosecuted, defendants in error introduced testimony of former officers of the water company to the effect that a supplemental agreement in writing had been entered into between the Cudahy Company and the water company, whereby the water company was held harmless and released from further obligation in the event that the city, upon acquiring the plant, should raise the rates above the contract price. To the competency, relevancy, and materiality of this testimony plaintiff in error duly excepted, and at the close of all the evidence moved for a directed verdict in its favor. At the conclusion of the discussion which followed, defendants in error likewise moved for a directed verdict. The court thereupon overruled plaintiff in error's motion, and sustained that of the defendants in error, pursuant to which judgment was entered in behalf of defendants in error.

[1] We are met first by the motion of de-

fendants in error to strike from the record the bill of exceptions and to dismiss the case. In this motion two bills of exception are referred to—the one incorporating the proceedings at the first of the last two trials wherein a verdict was instructed for plaintiff in error, but in which the motion for new trial was granted; and the second, for the proceedings at the last trial from which this writ is prosecuted. The claim is made that the proceedings at the first of these trials cannot be considered, because a bill of exceptions was not filed within the term, nor within any extension thereof. This point is clearly without merit, for the reason that there was no final judgment until in the second trial. At that trial all the evidence in the former case was considered, and upon the insistence of defendants in error was incorporated within the bill here presented. In fact, at the argument counsel for defendants in error conceded that the two bills, if such they may be called, were tied together and consolidated by the proceedings at the second trial. Therefore we have in effect but one bill of exceptions.

[2] Counsel for defendants in error contend that this bill was not filed in time, and therefore cannot be considered. The hearing upon motion for new trial filed by plaintiff in error was continued from time to time until March 5, 1926, on which date the motion was overruled. Sixty days were granted to plaintiff in error within which to file a bill of exceptions. The term in which this order was made expired April 3, 1926. The bill of exceptions, a very lengthy one, was prepared and tendered on April 30, 1926, at which time both parties appeared by attorneys. Counsel for defendants in error objected to the filing of the bill until they had had sufficient opportunity to examine it. The court, therefore, suggested that the time for filing be extended for this purpose. Counsel for plaintiff in error, being satisfied that such extension could be made, consented. The court assured them that it would make an order extending the time, and prior to the expiration of the original period entered the following order: "For good cause shown, it is ordered that the time in which to file the transcript on writ of error in the Circuit Court of Appeals, Eighth Circuit, be and the same is hereby enlarged for a period of 30 days from and after May 4, 1926."

Upon examination counsel for defendants in error requested that the proceedings at the first trial be set out in full and not by reference; this was done. The bill was approved and filed May 29, 1926. At this time counsel

for defendants in error objected and excepted, on the ground that the bill was not filed within the time allowed by any order of court, nor by one within the power of the court to grant. Counsel evidently rely upon the principle announced by the Ninth Circuit in Anderson et al. v. United States (C. C. A.) 269 F. 65: "After the expiration of the term at which a judgment was rendered and of any extended time allowed by rule of court for settling a bill of exceptions, the court is without jurisdiction to grant any further extension of time, and such jurisdiction cannot be conferred by consent of counsel"—citing, among other cases, O'Connell v. United States, 253 U. S. 142, 40 S. Ct. 444, 64 L. Ed. 827.

[3] In the latter case the Supreme Court held that, where a standing rule of a District Court extended the term for the purpose of making and filing bills of exception, and still another provided that the time allowed by the rules might be extended by order made before its expiration, but that no such extension or extensions should exceed 30 days in all, the lower court lost its power to receive and settle a bill "when the term as extended by rule had expired and when a further period of less than 30 days, allowed by order made before such expiration, had also expired, notwithstanding further attempted extensions, each ordered before expiration of its predecessor." But in the O'Connell Case, as in the Anderson Case, the time for allowing bills was expressly limited by a standing rule. In the case at bar no standing rule governed. In the latter case bills of exception may be signed at any time before the trial court loses jurisdiction of the cause by expiration of the term, or such time thereafter as may have been duly prescribed. Exporters v. Butterworth-Judson Co., 258 U. S. 365, 42 S. Ct. 331, 66 L. Ed. 663.

In Great Northern Life Insurance Company v. Connie A. Dixon, 22 F.(2d) 655, decided October 26, 1927, this court said: "The court has jurisdiction to settle and sign a bill of exceptions during the judgment term, and any valid extension thereof. The extension of the term may be made (1) by standing order; or (2) by special order made during the judgment term or a valid extension thereof. At the end of the judgment term and any valid extension thereof, the court loses jurisdiction to settle and sign a bill of exceptions"—citing many decisions of this and other courts to that effect. Such has been the general practice, certainly in this jurisdiction. The District Court had power to make the order of extension which it undertook to make.

[4] But attention is called to the fact that that order merely extended the time within which to file the transcript in this court and did not enlarge the time for filing the bill of exceptions. Upon the face of the record, therefore, the bill of exceptions was allowed and filed after the periods within which, under the strict terms of the orders made, the court had retained control of the case for that purpose. But there is an exception to the rule that a bill presented within such time cannot be signed thereafter. In extraordinary and exceptional circumstances the courts have excepted particular cases from this rule to subserve the purposes of justice.

In Davis v. Patrick, 122 U. S. 138, 7 S. Ct. 1102, 30 L. Ed. 1090, the bill was seasonably submitted to the judge for signature, but was not signed until after the expiration of the term and without order of extension. The delay was caused by the judge. The court said: "The defendant was not to blame for the delay beyond the time named in the stipulation. He appears to have done all he could to procure the settlement of and signature to the bill, and he cannot be prejudiced by the delay of the judge." To the same effect: United States v. Breitling, 20 How. 252, 15 L. Ed. 900; In re Chateaugay Ore & Iron Co., Petitioner, 128 U. S. 544, 9 S. Ct. 150, 32 L. Ed. 508; Hume v. Bowie, 148 U. S. 245, 13 S. Ct. 582, 37 L. Ed. 438.

In Western Dredging & Improvement Co. v. Heldmaier (C. C. A. 7) 116 F. 179, the court said: "The delay in the signing by the trial judge, not being due to neglect of the parties, must be deemed a case of delay for the convenience of the trial judge, and to fall within the exception declared in Davis v. Patrick and In re Chateaugay Iron & Ore Co., supra."

The same court in Franklin County v. Furry (C. C. A.) 144 F. 663, used this language: "The general rule is that a bill of exceptions must be filed during the term at which judgment is entered or within an extension of time granted during the term. If the party who prepares and tenders the bill is not at fault, delay that is occasioned by his adversary or by the act of the judge may be excused." See, also, Dalton v. Gunnison (C. C. A. 9) 165 F. 873.

The bill in this case was prepared and tendered for filing within the time fixed by the court at the term in which the motion for new trial was overruled. The extension made was at the instance of counsel for defendants in error, and, in fact, of the judge himself, who stated that he was unwilling to approve the bill until counsel had had opportunity to examine it. The affidavits on file, in opposition to the motion to dismiss, disclose that the stenographer was unable to complete the bill of exceptions until at the time it was presented for approval, which was on April 30th. This fact is not disputed, and the size of the record itself supports this sworn statement. Examination of that record could not be completed within the first extension period. The request for examination was reasonable. The authority of the court to grant a further extension cannot well be denied. The court itself undertook to do this, and counsel for plaintiff in error cannot be held to be remiss in relying upon the action of the court. The order of extension was in fact filed, but through inadvertence was made to apply only to the filing of the transcript in this court. We think the circumstances disclosed come within the exception to the general rule, and that plaintiff in error should not be prejudiced, in the absence of fault on its part.

[5-9] Complaint is made of the action of the court in permitting an amendment to the motion for new trial after the close of the term at which it had directed a verdict and entered a judgment in favor of plaintiff in error, and in granting the new trial. The original motion was filed in time. "It is a general rule of the law that all the judgments, decrees, or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court." Bronson v. Schulten, 104 U. S. 410, 415, 26 L. Ed. 797.

And by appropriate order the hearing upon such motions may be continued from time to time, and even from term to term, and by them the judgment is held in abeyance. It follows necessarily that the court retains jurisdiction to permit amendments at any time before the motion is disposed of. It is urged here that the ground stated by amendment was evidence newly discovered, and that the evidence tendered does not fall within that rule. We think the court was justified, under the circumstances presented, in regarding this evidence as newly discovered within the meaning of the rule; but, independently of that, it was within the power of the court, in the interest of justice, to sustain the motion in the exercise of a sound discretion. Furthermore, an order granting or refusing a new trial, which the court has the jurisdiction to make (and the court in this case had such jurisdiction), is discretionary with the trial court, and cannot be reviewed

on appeal or writ of error in the federal courts. The power and practice of the federal courts are not conformed to those of the state courts in matters relating to bills of exception, motions for new trial, and methods of review of their judgments. City of Manning v. German Ins. Co. (C. C. A. 8) 107 F. 52; Cowperthwaite v. Jones et al., 2 Dall. 55–56, 1 L. Ed. 287; Chicago, M. & St. P. Ry. Co. v. Leverentz (C. C. A. 8) 19 F.(2d) 915; Duke v. St. Louis & S. F. Ry. Co. (C. C.) 172 F. 684.

[10] It is contended by plaintiff in error that the issue tendered by the amendment to the motion for new trial, to wit, that there was a supplemental agreement which formed part of the complete contract between the Cudahy Company and the water company, was not embraced within the answer and defense of defendants in error; but that answer did put in issue the existence of a valid contract upon which plaintiff in error sued, and it was incumbent upon the latter to establish a full and complete contract entitling it to the relief it sought.

[11-13] From the record it appears at the close of all the evidence both sides moved for a directed verdict. The effect of this was to waive a jury trial and submit all questions of fact, as well as of law, to the judge. We cannot review his finding, unless there was no evidence upon which that finding can be sustained. Swift & Co. v. Columbia Ry., Gas & Electric Co. (C. C. A. 4) 17 F.(2d) 46–49. The witnesses upon whose testimony the claim of the supplemental contract was based were Alonzo B. Hunt, superintendent of the water company at the time the contract in suit was made, Theodore C. Woodbury, who was president of the company at that time, and E. M. Fairfield, who was its general manager. Hunt testified that objection was made to the contract, as submitted by the Cudahy Company, for the reason that the termination clause, to be effective in case the city took over the plant, was omitted from it. Woodbury stated that he signed the contract only upon condition that the attorney for the water company, Mr. Hall, should get a supplemental contract which would protect the water company in the event of the transfer of the property to the city and the raising of rates by the latter. The attorney agreed to get such a contract. Fairfield testified that such a contract was procured and that it was placed in the files of the company. Both Woodbury and Fairfield testified that all such files had been sent East after the city bought the plant, were retained for a period of about 6 years, and were then destroyed;

that the writing containing this supplemental agreement was therefore no longer in existence. Fairfield, who saw it, testified that "it was an agreement on the part of the Cudahy Packing Company to hold the water company harmless for any liability for damages in case the city acquired the waterworks plant before the expiration of the terms of the contract."

[14, 15] It is further urged that this testimony is in large part hearsay; that the conversations mentioned were not held in the presence of any representative of the Cudahy Company, and were therefore not binding upon it. The testimony of Hunt and Woodbury as to discussions among themselves and with Hall, their attorney, is subject to this criticism, if that testimony is to be regarded as direct evidence of the existence of the supplemental contract; but as tending to show the attitude of the water company, and in explanation of the execution of the original draft of the contract, and its subsequent delivery without incorporation therein of the termination clause in question, we think it was admissible. It then remained to be shown by competent testimony whether this insistence of the officers of the water company ultimately found expression in any form binding upon plaintiff in error as a modification or condition of the contract sued on. The testimony of Fairfield is direct and competent to that effect, and was not disputed. We think there was before the court evidence sufficient to justify a finding that such a supplemental agreement was made and its substantial terms.

[16] Counsel next insist that, even if this be so, those terms were not sufficient to excuse the obligation of the city under the clause of assumption in the deed; that the evidence discloses at most only an agreement to discharge the water company from liability, and not that the contract should be terminated. This makes necessary a construction of the assumption clause. It is evident that the purpose of this clause was to assume and thereby relieve the water company from any "obligations" which it had entered into and which were subsisting at the time the city acquired the plant. The transaction was between the city and the water company. It was the rights and obligations of the latter that were sought to be protected to the extent provided in the deed. It is unreasonable to suppose that the water company undertook to protect its consumers in contracts for which it itself was no longer obligated, and especially plaintiff in error alone of all those similarly situated, or that the city had in

mind such a construction of this assumption clause. In our judgment, release of the water company from obligation under the Cudahy contract was as effective for the purposes of this case as a provision that the contract should terminate with the acquisition of the plant by the city would have been.

[17] It cannot successfully be contended that, in the absence of special contract, the city might not fix reasonable rates for supplying water, which would supersede lower rates agreed on in contracts made previously between the water company and its consumers, as the legitimate effect of a valid exercise of the police power. Such action would not impair the obligation of contracts, nor deprive consumers of property without due process. Union Dry Goods Co. v. Georgia P. S. Corp., 248 U. S. 377, 39 S. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420; Public Utilities Commission et al. v. Wichita R. & Light Co. (C. C. A. 8) 268 F. 37.

[18, 19] Unless, then, the city was limited in the exercise of this power by its contract of assumption in the deed, its increase of the rates to the Cudahy Company, if reasonable, cannot be reviewed. The evidence in this case is persuasive that such increase was both reasonable and necessary. Finally, it is claimed that, even in the absence of this contract the water board of the city of Omaha was wholly without power or authority to fix an 8-cent rate for plaintiff in error and other packers in South Omaha, because, it is claimed, that power to make rates in South Omaha had been irrevocably conferred on the mayor and council of South Omaha for a period which did not expire until four months after the water contract itself, if permitted to run, would have expired. At the time the contract was made South Omaha was not a part of the city of Omaha, as it now is. But in the decision of this court in Omaha Water Co. v. City of Omaha (C. C. A.) 162 F. 225, 15 Ann. Cas. 498, it was established that this water system, existing partly in Omaha proper and partly in South Omaha, was an entire system, which the city, under the legislative act, was compelled to purchase as a whole; this it did. Necessarily its authority and power, as granted by statute, must apply to the system as a whole.

[20] It is urged that plaintiff in error is not bound, as in the case of joint motion for directed verdict, because the court first overruled its motion, and the only question remaining is whether it properly sustained defendants in error's motion under ordinary rules. A careful examination of the record convinces that this point is without merit.

The court, while indicating that in its judgment defendants in error should file such a motion, stated fairly what the effect of such a joint submission would be. Counsel for plaintiff in error remained passive and made no effort to withdraw its motion; that of defendants in error was then filed, and the court passed upon both motions contemporaneously. All points urged by both parties have been carefully considered.

Upon the whole record it is our conclusion that the judgment below should be affirmed; and it is so ordered.